(No. 17498.—Judgment affirmed.)
ERNESTINE SCHUMANN-HEINK, Plaintiff in Error, vs.
RICHARD S. FOLSOM, Defendant in Error.

*Opinion filed December 21, 1927.*

1. TRUSTS—*owner of property has full power to create trust in regard thereto.* Anyone competent to contract may make such disposition of the legal title to his property as he pleases, may annex such conditions and limitations to its enjoyment as he chooses, and may vest it in trustees for carrying out his intention.

2. SAME—*when certificate holders of a business trust are not partners.* Where, under the declaration of trust, the certificate holders in a business trust retain control over the trustees and have authority to control the management of the business a partnership relation exists, but where the declaration of trust gives the trustees full control of the management of the business of the trust and the certificate holders are not associated in carrying on the business and have no control over the trustees there is no liability as partners, as the trustees in such case are not agents and have no authority to bind the *cestuis que trust.*

3. SAME—*trustee of business trust must stipulate against personal liability.* As the trustee of a business trust has full control over the trust property, is not an agent and looks to no one as principal, his contract is his personal undertaking, and if he desires to protect himself from individual liability he must stipulate that he is not to be personally responsible and that the other party is to look solely to the trust estate.

4. SAME—*when trustee of business trust is not personally liable on contract.* A trustee of a business trust, who, when acting as secretary for the other trustees, signs a contract involving a promise to pay a certain party a certain sum of money, is not personally liable on the contract, where it contains a provision limiting liability to the assets of the trust and exempting the trustees from personal liability, of which provision the other party to the contract was fully aware, and where the trustee was guilty of no fraud which would make him personally liable.

5. PARTNERSHIPS—*what constitutes a partnership.* A partnership is, in effect, a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his co-partner; and mere participation in the profits of a business does not create a partnership.

328—21

6. CONTRACTS—*agreement with creditor to look to certain fund for reimbursement is not against public policy.* It is not against public policy to make an agreement with a creditor that he shall, in case of default in payment, look exclusively to a particular fund for his reimbursement.

7. SAME—*contracts will not be held void as against public policy except in clear cases.* Contracts will not be held void as being contrary to public policy unless they are clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or manifestly tend to injure the public welfare, as it is likewise to the public interest that freedom of contract be not unduly restricted.

WRIT OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

STEIN, MAYER & DAVID, (OSCAR E. CARLSTROM, Attorney General, ALBERT D. RODENBERG, JAMES W. GULLETT, SIGMUND W. DAVID, and OSCAR FAINMAN, of counsel,) for plaintiff in error.

JAMES G. SKINNER, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Ernestine Schumann-Heink, plaintiff in error, filed her bill in the circuit court of Cook county against Richard S. Folsom, defendant in error, and Andrew P. Mackie, Henry H. Lippert and Albert G. Hines, as trustees of the Goodland Company, Folsom, Hines and J. B. Ransom, individually, and Folsom, Mackie, Lippert, Hines, Ransom and Byron A. Bearce, as co-partners owning the shares of stock of the Goodland Company. Folsom and Mackie, the only defendants served with process, answered the bill. There was a hearing before the chancellor, and a decree was entered against Mackie individually for $10,000, and against Mackie and Folsom, as trustees of the Goodland Company,

for a like amount payable only out of trust property. The
bill was dismissed for want of equity as to Folsom individ-
ually and as to Folsom and Mackie as co-partners. Plain-
tiff in error appealed to the Appellate Court from that
portion of the decree which dismissed her bill as to Folsom
individually and as a partner. The decree was affirmed, and
the record is now before this court as a return to a writ
of *certiorari.*

This litigation arises out of a contract entered into
April 9, 1920, between plaintiff in error and the Goodland
Company, under which there became due plaintiff in error
the sum of $8075.21, with interest at six per cent from
date. The contract contained this provision: "This obli-
gation is executed in behalf of the trustees under the dec-
laration of trust made and delivered at Boston, Massachu-
setts, and deposited with the Massachusetts Trust Com-
pany, not individually but as such trustees, to bind the trust
estate." The contract is signed, "Goodland Company, by
Albert G. Hines, President and Trustee.—Attest: Richard
S. Folsom, Secretary." The seal attached bears the words,
"Goodland Company, organized under declaration of trust
dated May 21, 1919, at Boston, Massachusetts." The bill
is filed on the theory that the trustees and shareholders
could not limit their liability without complying with the
laws of Illinois governing the organization and manage-
ment of corporations or limited partnerships, and that the
plan under which Folsom and his associates were doing
business was a fraudulent scheme designed to enable them
to circumvent the laws of this State.

The declaration of trust under which Folsom and his
associates were acting was executed and delivered in the
city of Boston, Massachusetts, May 21, 1919. It was de-
posited with the Massachusetts Trust Company of Boston
and was filed in the office of the commissioner of corpora-
tions and taxation of Massachusetts. It was signed by
Richard S. Folsom, Andrew P. Mackie and Henry H. Lip-

pert, who became the first trustees. It commences with a declaration of trust, and provides that the trustees in their collective capacity shall be designated "Goodland Company," and under such name shall manage and administer the trust estate, execute all their instruments of writing and do all other things relating to the trust. The declaration of trust, which consists of twelve articles subdivided into thirty-five sections, is too long to set out in this opinion but its provisions may be briefly summarized. The trustees are given power to change the name of the trust, to increase the number of trustees, to fill any vacancies caused by death, resignation or otherwise, and to fill all places created by an increase in the number of trustees. The trustees, or any officers or committees selected from their number, are given almost unlimited power to deal with the property forming the subject matter of the trust. They may make all rules and regulations and changes therein, consistently with the declaration of trust, deemed necessary for the management of the trust estate. They may remove a trustee, officer or member of any committee when they consider the interests of the trust so require and may fill all vacancies caused by such removal. They are given the absolute and exclusive control of all property at any time belonging to the trust, and the shareholders are specifically deprived of any voice in its management. The trustees are given power to fix the compensation of themselves and all officers and employees of the trust, and their compensation, together with all expenses, disbursements, losses and liabilities of the trustees, is made a lien on the trust estate prior to any rights of the shareholders therein. It is provided that all contracts and undertakings of the trustees shall be taken to have been executed or done in their capacity of trustees under the declaration of trust, and it is required that all contracts and undertakings shall recite that the same are executed by the trustees as such and not by them individually. The trustees are prohibited from making a con-

tract which binds the shareholders, and it is required that
every contract or undertaking shall state that it is enforce-
able against and payable out of the funds of the trust, only,
and that there shall be no personal liability of the trustees
or the shareholders.  The trustees are authorized to issue
10,000 preferred beneficial interest shares of the par value
of $100 each and 20,000 common shares of no par value,
and the rights of the shareholders of each class are fixed
and the powers of the trustees with respect to changing the
rights of the shareholders and increasing or decreasing the
number of shares are set forth.  It is provided that the trust
shall continue for a term of twenty-one years after the
death of the last survivor of the original trustees, and there-
upon the affairs of the trust are to be wound up in the
manner specified.  The only rights possessed by the share-
holders are the right to dividends, which shall be declared
at the discretion of the trustees, and, in case of the disso-
lution of the trust, the right to their proportionate shares of
the trust estate after the payment of all debts and liabilities.

The trust is a very comprehensive institution.  It is as
general and as elastic as contract.  It originated and was
reduced to practice under the jurisdiction of courts by the
civil law, was expanded and developed in the courts of
chancery, and has been employed in nearly every field of
human activity.  Of late years it has been and is utilized in
the field of commerce and trade as a substitute for the cor-
porate or partnership organization.  Such a trust is created
by the execution of a declaration of trust by one or more
trustees, to whom there has been or will presently be trans-
ferred the property or money which is to constitute the
*corpus* of the trust.  The interests of the several *cestuis que
trust* are represented by certificates showing the propor-
tionate shares of the holders.  Thus the *corpus* of the trust
corresponds to the capital of the incorporated company, the
trustees to the board of directors, the beneficiaries to the
stockholders, the beneficial interests to shares of stock and

the declaration of trust to the charter. But there are material differences, to be noted later, in each of the five instances of comparison. When the express trust is used as an agency of commerce it is commonly known as a business trust. Because of its development and common use in the State of Massachusetts it is often called a Massachusetts trust, and because it finds its basis in the law of contract and does not depend upon any statute for its existence it is sometimes called a common law trust. It may be stated as a general proposition that anyone competent to contract may make such disposition of the legal title to his property as he pleases, may annex such conditions and limitations to its enjoyment as he chooses, and may vest it in trustees for the purpose of carrying out his intention. He has the same power to create trusts as he has to alienate the legal title to his property. (1 Perry on Trusts,—5th ed.—sec. 28.) Since 1880 the legality of the business trust has been recognized in England and for more than forty years it has been in use in Massachusetts. Sears, in his work on Trust Estates as Business Companies, (2d ed. sec. 19,) says: "It is by no means novel or unusual that trust estates should be created either for embarking in a new business or continuing an old one, and the legal and equitable status of such estates are well defined, as also the relations they and their trustees and their *cestuis que trust* bear to each other and to third persons with respect to their acts and contracts arising in the course of the existence of such estates." Wrightington, in his work on Unincorporated Associations and Business Trusts, (2d ed. sec. 4,) says: "The newest law to-day concerns the application of old principles to the new problems created by associations for profit, and trusts, and the distinctions between these two forms of business organization." If the declaration of trust involved in this case creates a trust and there is nothing in it which is against the public policy of this State, then the decision of the case depends upon the application of well established principles

of the law of contracts and trusts. Because a new use is being made of the trust does not mean new principles of law are to be applied in determining the rights of the trustees, the *cestuis que trust* or persons dealing with the trustees.

The business trust is fundamentally different from the corporation. The stockholders of the corporation control, through the board of directors, the business of the corporation, while the unit holders of a business trust have no mutual rights and obligations and do not control the action of the trustees. The trustees of a business trust are analogous to the directors of a corporation in that both are the managers of the business of their respective institutions, but there is an essential distinction between a trustee and a director, founded on the very nature of things. A trustee is the holder of the legal title of the trust estate and deals with it as principal, subject only to an equitable obligation to account to the beneficiaries of the trust estate. A director does not deal with the funds of the corporation as principal but deals with them as the agent of the company of which he is a director and for which he is acting. A trustee is personally liable on his contract, but a director is not as long as he acts within his authority. A trust is no entity at all, while a corporation is an artificial person. A trust is an estate the legal title to which is vested in a trustee and the equitable title to which is held by individuals who bear no contractual relations among themselves. A corporation is an artificial body composed of individuals who own its capital stock and whose rights and liabilities are fixed by statute.

There are also essential differences between a business trust and a partnership, but there are times when it is difficult to determine whether the declaration of trust relieves the trustees and shareholders from liability as partners. A partnership is, in effect, a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his co-partner. (*State* v. *Cosgrove,* 36 Ida. 278, 210

Pac. 393; *Fougner* v. *First Nat. Bank of Chicago,* 141 Ill.
124.) Where under the declaration of trust the unit hold-
ers retain control over the trustees and have authority to
control the management of the business the partnership
relation exists. (*Frost* v. *Thompson,* 218 Mass. 360,
106 N. E. 1009; *Hart* v. *Seymour,* 147 Ill. 598; Dunn
on Business Trusts, sec. 140 *et seq.*) On the other hand,
where the declaration of trust gives the trustees full con-
trol in the management of the business of the trust and
the certificate holders are not associated in carrying on the
business and have no control over the trustees, then there
is no liability as partners. (*Smith* v. *Anderson,* 15 Ch. Div.
247; *Williams* v. *Inhabitants of Milton,* 215 Mass. 1, 102
N. E. 355; *Mayo* v. *Moritz,* 151 Mass. 481, 24 N. E. 1083;
*Rhode Island Hospital Trust Co.* v. *Copeland,* 39 R. I. 193,
98 Atl. 273; *Betts* v. *Hackathorn,* 159 Ark. 621, 31 A. L. R.
847; *Kramer & Co.* v. *Cummings,* 225 Ill. App. 26; *Home
Lumber Co.* v. *Hopkins,* 107 Kan. 153, 10 A. L. R. 879.)
It has been held that a debtor may create a trust for the
benefit of himself and his creditors, and that a creditor, by
accepting the benefits of the trust, does not render himself
liable to persons from whom the trustee purchases goods in
the prosecution of the trust business. (*Wells-Stone Mer-
cantile Co.* v. *Grover,* 7 N. D. 460, 41 L. R. A. 252; *Cox*
v. *Hickman,* 8 H. L. 268.) Where articles of partnership
provide that on the death of one partner his capital shall
be left in the business for a specified time, the executor of
the deceased partner is not admitted into the management
of the business and so is not personally liable for partner-
ship debts. (*Wild* v. *Davenport,* 48 N. J. L. 129, 57 Am.
Rep. 552.) Mere participation in the profits of a business
does not create a partnership. *Wild* v. *Davenport, supra;
Smith* v. *Knight,* 71 Ill. 148.

The declaration of trust involved in this case created a
business trust and not a partnership. This being true, the

trustees had no authority to bind the *cestuis que trust,* because a trustee is not an agent. When a trustee contracts he does so for himself. He has no principal. The contract is the personal undertaking of the trustee, and if he wants to protect himself from individual liability on the contract he must stipulate that he is not to be personally responsible and that the other party is to look solely to the trust estate. (*Taylor* v. *Mayo,* 110 U. S. 330, 4 Sup. Ct. 147; *Austin* v. *Parker,* 317 Ill. 348; *Bradner Smith & Co.* v. *Williams,* 178 id. 420.) In the case at bar the trustees did limit their liability by specifically stating that the contract was executed "not individually but as such trustees to bind the trust estate." Under the authorities this was sufficient. A covenant by trustees, "as such trustees but not otherwise," to re-pay a loan is a covenant to re-pay the money out of the trust fund, only, and does not impose any personal liability upon the trustees. (*In re Robinson's Settlement,* [1912] 1 Ch. 717.) In *Shoe and Leather Nat. Bank* v. *Dix,* 123 Mass. 148, the trustees were held to be relieved from personal liability on a note which read, "We, as trustees, but not individually, promise," etc. In *Bank of Topeka* v. *Eaton,* 100 Fed. 8, the circuit court of appeals relieved the trustee of personal liability on a note which stated that the trustee, "as such trustee and not otherwise," promised, etc. It is not against public policy to make an agreement with a creditor that he shall, in case of default in payment, look exclusively to a particular fund for his reimbursement. *McCarthy* v. *Parker,* 243 Mass. 465, 138 N. E. 8; *Shelton* v. *Montoyo Oil and Gas Co.* 272 S. W. (Tex.) 222.

Plaintiff in error contends that it is against the public policy of this State to permit business to be carried on by trustees who limit their liability to the trust funds, and relies chiefly for support of her argument on the decision of this court in *Greene* v. *People,* 150 Ill. 513. The opinion in that case is unsatisfactory as a precedent because of the meager statement of facts. We have examined the tran-

script of record filed in the cause and find that it is a pro-
ceeding in *quo warranto* filed by the Attorney General to
inquire by what authority certain persons named in the in-
formation pretended to act as a corporation and to conduct
an insurance business under the name "American Lloyds,
Limited." The articles of agreement characterize the in-
stitution as an association and declare that its business shall
be conducted by a committee of three of the subscribers,
to be known as the "board of control." The articles pro-
vide for an annual meeting of the subscribers, at which the
members of the board of control are elected. Money sub-
scribed was deposited with a trustee, whose sole duty was
to hold the original fund and the accumulation from pre-
miums of insurance and to pay it out on the order of the
board of control. The active management of the insurance
business was in the hands of an attorney in fact and an
underwriter, whose duties were prescribed by the articles
of agreement. It is clear that this business organization
had none of the characteristics of a business trust, and the
decision in the case can have no bearing on the case at bar.
It has been generally held by the courts of this country
that business trusts, as such, are not against public policy.
(9 Fletcher's Cyc. of Corporations, sec. 6064; Annotation,
*Massachusetts Trusts,* 7 A. L. R. 612.) In considering
whether any contract is against public policy it should be
remembered that it is to the interests of the public that per-
sons should not be unnecessarily restricted in their freedom
to make their own contracts. Agreements are not held to
be void, as being contrary to public policy, unless they be
clearly contrary to what the constitution, the statutes or
the decisions of the courts have declared to be the public
policy or unless they be manifestly injurious to the public
welfare. Courts must act with care in extending those rules
which say that a given contract is void because against pub-
lic policy, since if there be one thing more than any other
which public policy requires, it is that men of full age and

competent understanding shall have the utmost liberty of contract, and that their contracts, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by the courts. *Steen* v. *Modern Woodmen,* 296 Ill. 104.

The evidence shows that there was paid into the hands of the trustees, immediately after the execution and delivery of the declaration of trust, approximately $25,000, and that within a few months this sum was increased to substantially $100,000. The principal business of the Goodland Company was to sell certain California lands, and the trustees immediately engaged in this business. The assets of the company, which consisted largely of notes executed by purchasers of irrigated lands upon which the company held options, varied from time to time. According to the testimony of Folsom and Mackie they exceeded one-half million dollars at different times in 1920. When plaintiff in error entered into the contract of April 9, 1920, she knew that she was dealing with a business trust, and she knew that the contract, under which the promise of payment was made to her, contained a provision limiting liability to the assets of the trust and exempting defendant in error and the other trustees from personal liability. The chancellor, who saw the witnesses and heard their testimony, has found that defendant in error was not active in the management of the trust, had no part in negotiating or preparing the contract in question, and that he was guilty of no fraud which would make him personally liable under the contract. The evidence shows that defendant in error was the attorney who organized the Goodland Company and that his only participation in the management of the company was as an attorney at law. He accepted the position of secretary as an accommodation to the trustees, and the signing of the contract in question was his last act as secretary. His resignation as a trustee had been mailed to the other trustees several days before he signed this con-

tract and was mailed to the Massachusetts Trust Company on the same day the contract was dated. The Appellate Court has affirmed the finding of the chancellor on the facts, and we agree with this conclusion.

The judgment is affirmed.

*Judgment affirmed.*