# Illinois Official Reports

## Appellate Court

***James v. SCR Medical Transportation, Inc.*, 2016 IL App (1st) 150358**

| | |
|---|---|
| Appellate Court Caption | COREY JAMES, Plaintiff-Appellant, v. SCR MEDICAL TRANSPORTATION, INC.; PACE SUBURBAN BUS SERVICE, a Division of the Regional Transportation Authority (RTA); EMPIRE FIRE AND MARINE INSURANCE COMPANY; and GEMINI INSURANCE COMPANY, Defendants (SCR Medical Transportation, Inc.; Pace Suburban Bus Service, a Division of the Regional Transportation Authority (RTA); and Empire Fire and Marine Insurance Company, Defendants-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-0358 |
| Rule 23 order filed | June 16, 2016 |
| Rule 23 order withdrawn | August 11, 2016 |
| Opinion filed | September 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-08565; the Hon. Peter Flynn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Shelist Law Firm L.L.C., of Chicago (Samuel A. Shelist, of counsel), for appellant.<br><br>Cremer, Spina, Shaughnessy, Jansen & Siegert, L.L.C., of Chicago (Brian A. O'Gallagher and Kristina M. Beck, of counsel), for appellees. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Corey James, a van driver employed by SCR Medical Transportation, Inc. (SCR), to drive a Pace paramedical transportation vehicle, suffered personal injuries in Chicago on March 9, 2010, in a collision with a motorist he contends was underinsured. After receiving the $50,000 limit of the other motorist's insurance coverage and a $28,608 settlement in workers' compensation benefits from his own employer, James requested underinsured motorist (UIM) coverage from his employer's business automobile liability insurer, Empire Fire and Marine Insurance Company (Empire). Empire denied the claim because SCR's UIM coverage was limited to $50,000, which was the amount James had already received from the other driver, meaning that he was not "underinsured" within the meaning of Empire's policy. James then filed this suit seeking declaratory relief entitling him up to $1 million in UIM coverage from SCR, Pace, and Empire, on grounds that when SCR contracted to provide drivers for Pace vans, SCR agreed to maintain $1 million in UIM coverage. He made four attempts at pleading a cause of action. James appeals from a trial court order dismissing his third amended complaint with prejudice pursuant to section 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-619 (West 2010).

¶ 2    We note that one of the named defendants, Gemini Insurance Company (Gemini), is not participating in this appeal because its dismissal from the suit is not being challenged. Gemini provided excess umbrella insurance to James's employer, SCR, and James included Gemini's name in the caption of his original, first amended, and second amended complaints, but made no allegations against the company. The trial court granted Gemini's motion to dismiss. James neither appealed from that ruling nor included Gemini in his third amended complaint.

¶ 3    Motor vehicle liability, UIM coverage, and uninsured motorist (UM) coverage are statutorily required forms of insurance. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 68, 949 N.E.2d 639, 652 (2011) (citing 215 ILCS 5/143a, 143a-2(4) (West 2004), and 625 ILCS 5/7-601(a) (West 2004)).The term "underinsured motor vehicle" means a motor vehicle whose ownership, maintenance, or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for UIM coverage provided the insured as defined in the policy at the time of the accident. 215 ILCS 5/143a-2 (West 2004). The purpose of UIM coverage is to protect the insured and any additional insureds from the risk that a negligent driver of another vehicle who causes injury to the insured or the additional insureds will have inadequate liability coverage to compensate the injuries caused by his or her negligence. *In re Estate of Anderson*, 408 Ill. App. 3d 428, 432, 945 N.E.2d 661, 665 (2011). UIM and UM are both intended "to place the insured in the same position he [or she] would have occupied if the tortfeasor had carried adequate insurance." (Internal quotation marks omitted.) *Phoenix Insurance Co.*, 242 Ill. 2d at 68, 949 N.E.2d at 652.

¶ 4    The first substantive issue we address is whether James may bring a claim against his employer. Five of the nine counts were directed at SCR. In count I, James sought a declaratory judgment to the effect that the SCR-Pace contract regarding paratransit service required $1 million in UIM coverage and that a purported oral modification of that requirement was "against public policy and void." Count IV consisted of allegations that SCR, Pace, and Empire engaged in a civil conspiracy to "circumvent" the $1 million UIM requirement. Count V was a proposed class action seeking a declaratory judgment on behalf of all injured passengers and drivers of SCR-Pace vans who had been denied more than $50,000 in UIM coverage. There were two counts labeled as "Count VI," the second of which sought a declaratory judgment that SCR had "an obligation to provide $1,000,000 UIM benefits and has breached this obligation." Count VII was similar, but recast the allegations "AS TO THE CLASS OF PERSONS AGGRIEVED" and described the proposed class of plaintiffs as "all van drivers and handicapped passengers" who have not been paid "the $1,000,000 UIM benefits to which they are entitled."

¶ 5    We apply *de novo* review to the dismissal of the claims against SCR pursuant to section 2-619 of the Code of Civil Procedure. *Martinez v. Gutmann Leather, LLC*, 372 Ill. App. 3d 99, 101, 865 N.E.2d 325, 327 (2007). Under section 2-619, the defendant admits to all well-pled facts in the complaint, as well as any reasonable inferences which may be drawn from those facts, but asks the court to conclude that there is no set of facts which would entitle the plaintiff to recover. *Martinez*, 372 Ill. App. 3d at 101, 865 N.E.2d at 327. Given the *de novo* standard, we may affirm on any basis or ground for which there is a factual basis in the record regardless of whether the trial court relied on that reasoning. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 586, 836 N.E.2d 681, 691 (2005). In other words, we are reviewing the ruling, not the trial court's reasons for entering that ruling. See also *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 18, 639 N.E.2d 592, 595 (1994) (in *de novo* review of summary judgment proceeding, appellate court reviewed propriety of ruling, not trial judge's explicit findings). Accordingly, we will not set out the numerous arguments that were made for and against the dismissal of James's fourth complaint or the remarks which the trial judge made about the arguments.

¶ 6    James contends he may sue SCR because he is exempt from the principle that an employee injured on the job normally cannot sue his Illinois employer, provided the employee is entitled to receive workers' compensation benefits from the employer or the employer's insurer. *Illinois Insurance Guaranty Fund v. Virginia Surety Co.*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503. The Act specifies that an employee has no right to sue his or her employer but may instead automatically recover for injuries arising out of and in the course of his or her employment without regard to any fault on his or her part. *Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503; *Fregeau v. Gillespie*, 96 Ill. 2d 479, 486, 451 N.E.2d 870, 873 (1983) (indicating the workers' compensation system "was designed to provide speedy recovery without proof of fault for accidental injuries" that occur in the work place during the course of work); 820 ILCS 305/5(a) (West 2008) ("No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***."); 820 ILCS 305/11 (West 2008) (workers' compensation "shall be the measure of the responsibility of any employer").

¶ 7        Under the statutory system, the employer is compelled to pay the employee and cannot assert various defenses that could be pled in a tort suit, however, the employer's liability is capped under the Act's comprehensive schedule of recovery. *Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503. Therefore, when an accident occurs, an employer assumes a new liability with regard to fault but avoids the prospect of a large civil damage award (*Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225 (1990) (discussing purpose of and exceptions to the Act)) and the employee receives prompt compensation for his or her injuries (*Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503).

¶ 8        In order to escape the exclusive-remedy rule, an employee must allege and prove one of four exceptions: his or her injury (1) was not accidental, (2) did not arise from his or her employment, (3) was not received during the course of his or her employment, or (4) was noncompensable under the Act, such as being discharged in retaliation for filing a claim for workers' compensation. *Meerbrey*, 139 Ill. 2d at 463, 564 N.E.2d at 1225; *Fredericks v. Liberty Mutual Insurance Co.*, 255 Ill. App. 3d 1029, 1031, 627 N.E.2d 782, 785 (1994).

¶ 9        James argues that he may sue SCR because he is "not suing SCR for 'injuries' but for [SCR's] failure to have and maintain [$1 million] in UIM coverage." Truly, however, what James is suing over is SCR's failure to have and maintain $1 million in UIM coverage with which to compensate him *for his injuries*. Thus, his claim against SCR comes within the scope of the Act and is barred by it, even if he had not accepted compensation through that system.

¶ 10       Secondly, as we outlined above, the record indicates that James filed a workers' compensation claim on March 17, 2010, which was a week after the accident, and accepted temporary total disability payments totaling $8026 from SCR while he was "intermittently" disabled until October 12, 2010, as well as a final, lump sum payment of $20,582 from SCR about 15 months after the accident. Accordingly, our second reason for rejecting James's carefully worded argument is that he elected to take workers' compensation benefits on grounds that his injuries were compensable under the Act, and he cannot now allege that the same injuries were not compensable under the Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 234, 408 N.E.2d 198, 200 (1980) (once the employee takes the express position that an injury is compensable under the Act, he is barred from taking the mutually exclusive position that his injury is an exception to the Act); *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205, 210, 569 N.E.2d 1211, 1214 (1991) (an injured employee is not permitted to seek workers' compensation benefits on a claim that the injuries are compensable and pursue a common-law action on grounds that the injury is noncompensable). James's compensation claim and James's lawsuit are legally inconsistent.

¶ 11       In addition, when James settled his workers' compensation claim against SCR on June 8, 2011, he indicated he did not anticipate further medical treatment and expense, and he expressly gave up the right to pursue further compensation from SCR, even if his condition worsened. In the settlement contract, the parties specified:

> "This represents a full and final settlement of all claims under the Workers' Compensation Act for injuries allegedly incurred on or about 3/10/2010, including any results, developments or sequelae, fatal or non-fatal, allegedly resulting from such

accidental injuries.[1] Issues exist as to whether these injuries are compensable, and this settlement is made to settle these issues. The settlement includes liability for temporary total compensation and all medical, surgical and hospital expenses incurred or to be incurred allegedly resulting from the accidental injury, for all of which the Petitioner [James] assumes responsibility.

*** 

The parties believe that petitioner shall not have the need for future medical expenses related to the claimant's injury and therefore have not allocated any sum for future medical expenses. ***

There are disputed questions of law and fact concerning the claim for injuries allegedly sustained by petitioner on 3/10/2010. In order to avoid further litigation and as a purchase of peace between the parties, the parties hereto have agreed to compromise, adjust, and to settle any and all claims for benefits under the Workers' Compensation Act arising out of the accident of 3/10/2010 upon payment of all obligations stated herein. The Respondent [SCR] is herby [*sic*] released, acquitted and discharged from any and all liability under the Workers' Compensation Act in any way arising out of the occurrence reflected herein."

¶ 12 James also said:

"I have read this document, understand its terms, and sign this contract voluntarily. *** I understand that by signing this contract, I am giving up the following rights:

* * *

3. My right to further medical treatment, at the employer's [expense], for the results of this injury.

4. My right to any additional benefits if my condition worsens as a result of this injury."

¶ 13 Any one of these three reasons—suffering work-related injuries, claiming that the injuries were compensable under the Act, or entering into a settlement contract that expressly released his employer from further expense—is enough to conclude that James cannot maintain this civil suit against SCR.

¶ 14 Our conclusion is not changed by James's citation to *Fredericks*, which we cited above for the proposition that James may not sue his employer. *Fredericks*, 255 Ill. App. 3d 1029, 627 N.E.2d 782. This is the only authority James cites and he makes a cursory presentation of it, instead of explaining how the dispute is similar to his own suit against SCR.

¶ 15 *Fredericks* was an injured worker's attempt to get the statutory benefits that James has already received from his employer. *Fredericks*, 255 Ill. App. 3d 1029, 627 N.E.2d 782. It concerns an ironworker who was hired to help renovate a large bridge that spans the Mississippi River and connects two different states, Illinois and Missouri. *Fredericks*, 255 Ill. App. 3d at 1030, 627 N.E.2d at 784. The ironworker was injured on the job and sought workers' compensation benefits under the Illinois system, rather than the Missouri system. *Fredericks*, 255 Ill. App. 3d at 1030, 627 N.E.2d at 784. His compensation claim was rejected. *Fredericks*, 255 Ill. App. 3d at 1030, 627 N.E.2d at 784. The ironworker then filed suit in

---

[1]Sequelae are aftereffects or secondary results of a disease or injury. Webster's Third New International Dictionary 2071 (1986).

Illinois against his employer and the employer's workers' compensation insurance carrier, contending that before the job began, his employer and his trade union entered into a binding agreement that any employee injury occurring during the project would be resolved under the Illinois statute. *Fredericks*, 255 Ill. App. 3d at 1030, 627 N.E.2d at 784. In his suit, the ironworker contended he was a third-party beneficiary of their agreement and that he was entitled to its enforcement. *Fredericks*, 255 Ill. App. 3d at 1030, 627 N.E.2d at 784. The employer, however, brought a motion to dismiss and persuaded the circuit court of St. Clair County that a dispute involving workers' compensation benefits was outside the court's subject matter jurisdiction. *Fredericks*, 255 Ill. App. 3d at 1030, 627 N.E.2d at 784.

¶ 16    Instead of then taking the issue to the administrative agency that handled workers' compensation claims, which was the Illinois Industrial Commission,[2] the ironworker took an appeal. *Fredericks*, 255 Ill. App. 3d 1029, 627 N.E.2d 782. In its decision, the appellate court outlined the principle that workers' compensation benefits are the full measure of an injured employee's compensation and that lawsuits against the employer are generally forbidden. *Fredericks*, 255 Ill. App. 3d at 1030-31, 627 N.E.2d at 784-85. The appellate court then discussed why certain exceptions have been made to the exclusive-remedy rule. *Fredericks*, 255 Ill. App. 3d at 1030-32, 627 N.E.2d at 784-86. The appellate court next determined that the commission and the courts had concurrent jurisdiction over whether the ironworker was contractually entitled to benefits under the Illinois system of compensation. *Fredericks*, 255 Ill. App. 3d at 1034-35, 627 N.E.2d at 787. This was because the commission routinely arbitrates which State's workers' compensation laws apply to a given injury and the circuit court has authority to resolve contract disputes. *Fredericks*, 255 Ill. App. 3d at 1034, 627 N.E.2d at 786. It was not necessary for the court to defer jurisdiction to the commission, however, because the suit before the court involved the worker's contractual right to benefits rather than a question about the Act and because the agency had no particular specialized or technical expertise on the issue. *Fredericks*, 255 Ill. App. 3d at 1034-35, 627 N.E.2d at 787. Accordingly, the appellate court reversed the circuit court's dismissal for lack of subject matter jurisdiction and remanded the case to that court for further proceedings. *Fredericks*, 255 Ill. App. 3d at 1036, 627 N.E.2d at 788.

¶ 17    We see no similarity between the ironworker in *Fredericks* and the current appellant. The ironworker was arguing his contractual right to workers' compensation benefits, but James has received workers' compensation benefits, consisting of not only temporary disability payments for seven months but also a final lump sum payment, which was intended to address all of James's injury. In mid-2011, James and his then attorney signed a settlement contract with SCR indicating, "The settlement [figure] includes liability for temporary total compensation and all medical, surgical and hospital expenses incurred or to be incurred allegedly resulting from the accidental injury, for all of which the Petitioner [James] assumes responsibility." James expressly acknowledged in 2011 that he was being fully compensated by SCR, but the following year he filed this suit against SCR for additional compensation. The case he relies upon does not permit him to do this.

---

[2]On January 1, 2005, the Illinois Industrial Commission became known as the Illinois Workers' Compensation Commission. *Roberson v. Industrial Comm'n*, 225 Ill. 2d 159, 162 n.1, 866 N.E.2d 191, 193 n.1 (2007) (citing 820 ILCS 305/1(c) (West 2004)).

¶ 18        Despite James's citation to *Fredericks*, we find that his claims against SCR are not exempt from the principle that an injured employee's relief is through the workers' compensation system rather than the courts. *Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 113758, ¶ 16, 979 N.E.2d 503. The circuit court's dismissal of SCR was proper and we affirm that ruling.

¶ 19        The next question is whether James may sue Pace in counts I, IV, V, VI (the first count of two labeled as count VI), and VIII based on the UIM insurance provision in the SCR-Pace contract, even though James is not one of the contracting parties. The concept that a third-party direct beneficiary may sue over the terms of a contract was introduced above by the ironworker's case, *Fredericks*. *Fredericks*, 255 Ill. App. 3d 1029, 627 N.E.2d 782. James contends he is a third-party beneficiary of actually three documents: (1) Pace's public request-for-proposals, which mandated $1 million in liability, UIM, and UM coverage; (2) SCR's proposal to Pace that included the three requested forms of insurance coverage; and (3) the resulting SCR-Pace contract.

¶ 20        It is undisputed that SCR initially had equal amounts of the three forms of coverage, but after 14 months it purchased a policy from a different insurer and that its new policy with Empire reduced the UIM and UM limits to $50,000. At the time, SCR had a fleet of 236 vans and SCR (not Pace) contends SCR's insurance broker proposed a reduction in SCR's costs for the policy year beginning October 2009 by modifying SCR's UIM and UM limits. The record includes a form that SCR's principal signed in order to affirmatively select the reduced UIM and UM coverage. The insurance broker testified that the reduction came about because he telephoned a risk manager at Pace who verbally gave permission for the coverage reduction and that when the broker conveyed the information to SCR, SCR then agreed to the change in coverage and to contract with Empire. The Pace risk manager who purportedly gave the oral authorization died before James filed this suit and Pace now states that because it has no written record in its files, it can neither confirm nor deny that the conversation described by the broker took place.

¶ 21        James is not disputing that the reduced UIM and UM selection form is valid, but he argues that any oral modification between SCR and Pace was ineffective because the SCR-Pace written contract required that modifications be made in writing and there are no e-mails, letters, meeting minutes of the Pace board of directors or ordinances adopted by the board that document Pace's approval for SCR to reduce the coverage. James contends that if Pace and SCR actually agreed to the reduced coverage, it would be "an outrageous abuse of power" by a public agency and that for "public policy" reasons, we should "plac[e] PACE in the position of an insurer, [by] requiring [it] to make good on the losses that would have been covered had proper insurance been obtained."

¶ 22        Pace responds that James has no right to bring a claim based on the SCR-Pace insurance clause because a third party cannot enforce the terms of a contract unless the document expressly identifies that person by name or at least by a descriptive class to which the person belongs. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020, 905 N.E.2d 920, 924 (2009); *Barney*, 266 Ill. App. 3d at 20, 639 N.E.2d at 597.

¶ 23        In *Martis*, for instance, a chiropractor who received discounted rather than full payments for his services in treating an injured worker tried to enforce the terms of the employer's workers' compensation insurance policy. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924. The policy said the insurer would "pay promptly when due" and that the insurer was "directly

and primarily liable to any person entitled to benefits payable by this insurance," that those persons "may enforce our duties," and that the "[e]nforcement may be against us or against you [employer] and us [insurer]." (Internal quotation marks omitted.) *Martis*, 388 Ill. App. 3d at 1018, 905 N.E.2d at 923. The insurer applied a PPO discount to the chiropractor's bills, even though he did not have a PPO discount agreement with the insurer, and he sued to collect the difference. *Martis*, 388 Ill. App. 3d at 1018, 905 N.E.2d at 923. There is, however, a strong presumption in Illinois that the contracting parties intend that the terms of their agreement apply only to them, not to others. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924; *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596. Even the fact that the contracting parties may have known, expected, or even intended that others would indirectly benefit from their agreement is not enough to overcome the presumption that the contract was intended to directly benefit only the contracting parties. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924; *Barney*, 266 Ill. App. 3d at 20, 639 N.E.2d at 597. Only direct beneficiaries have rights against the promisor and incidental beneficiaries have no rights whatsoever. *Barney*, 266 Ill. App. 3d at 20, 639 N.E.2d at 597. If the contract does not identify the plaintiff by name or the class to which he belongs, then the plaintiff is not a third-party beneficiary of the contract. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924. The workers' compensation insurance policy at issue in *Martis* did not identify the specific chiropractor or medical providers in general as third-party beneficiaries, and it was the injured worker, not his medical provider, whom the contract was referring to as the "person entitled to benefits" under the workers' compensation scheme. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924. Because the chiropractor was not a direct third-party beneficiary of the policy, the chiropractor had no right to enforce its terms. *Martis*, 388 Ill. App. 3d at 1024, 905 N.E.2d at 927.

¶ 24    The contract at issue in *Barney* was one in which the City of Chicago hired a contractor to "straighten out the Lake Shore Drive S-curve." *Barney*, 266 Ill. App. 3d at 15, 639 N.E.2d at 594. The contract required the contractor to require any subcontractors that it hired to obtain liability insurance before beginning work. *Barney*, 266 Ill. App. 3d at 15, 639 N.E.2d at 594. One of the subcontractors did not have motor vehicle liability insurance when it began hauling paving materials to and from the construction site and purportedly crashed into the back of a Chicago Transit Authority bus and caused serious injuries to one of the passengers. *Barney*, 266 Ill. App. 3d at 17, 639 N.E.2d at 594. The injured commuter contended the purpose of the clause requiring the contractor to require its subcontractors to get insurance was to protect members of the public such as herself who might be injured by subcontractors. *Barney*, 266 Ill. App. 3d at 17, 639 N.E.2d at 594. She contended this fact gave her the right to sue on the City of Chicago's contract, even though she was not one of the parties that executed the agreement. *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596. The court could find no language in the contract that expressly or even impliedly indicated that the insurance requirements were included for the direct benefit of the public. *Barney*, 266 Ill. App. 3d at 20, 639 N.E.2d at 597. Instead, the City of Chicago and the contractor persuasively argued that the insurance provisions were for their direct benefit to insulate them from loss for claims such as the passenger's suit. *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596.

¶ 25    Similarly, Pace now contends that Pace was the only intended beneficiary of the insurance terms it included in the SCR-Pace contract and Pace expressly denies that there was an intention to confer a benefit on any other party. Pace's general counsel since 2008 testified that Pace typically requires its vendors to carry automobile liability coverage, UM coverage, and

UIM coverage because Pace "intends to protect itself from *** claimants that are allegedly injured by, or while traveling on, vehicles being operated by Pace vendors." Pace contends it is nonsensical for James to argue that even though SCR was statutorily required to provide for James through the workers' compensation system, that both SCR and Pace specifically intended for the UM and UIM coverage requirements in the SCR-Pace contract to benefit James if he was injured while driving for SCR. Pace points out that it had no obligation to provide any UM and UIM coverage for James while James was working for SCR. Pace also argues that James's "public contract" or "public policy" argument is unpersuasive because Pace's internal guidelines for contract modification do not create rights for individuals like James to sue Pace. See *Rogers v. West Construction Co.*, 252 Ill. App. 3d 103, 111, 623 N.E.2d 799, 804 (1993) (duties owed between contracting parties cannot be read to establish beneficiary rights for nonparties). Pace also contends a fundamental problem with James's suit is that he has failed to cite any legal theory or contract provision that could compel Pace to be placed "in the position of an insurer" of James. This is because even if the SCR-Pace contract was enforced without the oral modification authorizing SCR to reduce its UIM from $1 million to $50,000, then it would be SCR, not Pace, that would be contractually obligated (by Pace) to maintain the $1 million level of UIM coverage. Pace also argues that James's suit against Pace is time-barred.

¶ 26        We find that James is not a third-party beneficiary of the SCR-Pace contract. James is like the chiropractor in *Martis* who could cite no contract language that identified him by name or referred to a descriptive class that encompassed him. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924. James is also like the bus passenger in *Barney*, who argued that the purpose of the insurance requirement was to protect members of the public who might be negligently injured during the performance of a work contract, but could cite no terms in the contract that affirmatively stated this intention. *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596. James has no contract provisions with which to overcome the strong presumption in Illinois that contracting parties intend that the terms of their agreement apply only to them, not to others. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924; *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596.

¶ 27        James incorrectly states that Pace van "passengers and drivers are the only possible potential beneficiaries" of UIM and UM coverage. His contention is contrary to the discussion in *Barney* indicating that one of the purposes of liability insurance is to insulate the insured and its contracting parties from claims. *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596. The trial judge emphasized this point to James before he filed this appeal. Although our review is *de novo* and does not need to rely on any reasoning of the trial judge (*Guinn*, 361 Ill. App. 3d at 586, 836 N.E.2d at 691), we agree with the judge's remarks at the hearing on Pace's and SCR's motions to dismiss James's third amended complaint. The judge said to James and the other parties:

> "Despite the argument that UIM coverage can't benefit SCR or Pace because theoretically it only applies where SCR or Pace are not at fault, that argument has not prevented most people from carrying insurance[.] *** Insurance coverage has a tendency to benefit the people who have insurance coverage even in its UM and UIM aspects because the risk of one who has such coverage of getting directly sued is [then] less. That was the underlying point of *Barney* [which concerned liability insurance, not

UIM insurance] and I think it applies in the UIM context as well despite James' eloquent arguments to the contrary.

Defending a lawsuit[,] even if one wins[,] is an expensive undertaking. *** So it's not irrational for Pace to want [insurance coverage] to guard against that possibility [of getting sued]."

¶ 28 Thus, James's contention, that passengers and drivers, not SCR and Pace, benefit from the UIM and UM coverage, was considered and rejected by the reasoning in *Barney* and when James first presented the contention in the trial court. *Barney*, 266 Ill. App. 3d at 19, 639 N.E.2d at 596. Pace's interest in avoiding the expense of litigation is particularly true when one considers that public transportation providers in northeastern Illinois, such as Pace and the regional commuter rail services, have not been on "sound financial footing" and have had a "long history of financial difficulties." *Copes v. Northeast Illinois Regional Commuter R.R. Corp.*, 2015 IL App (1st) 150432, ¶ 38, 45 N.E.3d 1123. These financial problems have been so debilitating that the General Assembly shortened the usual two-year statute of limitations applicable to tort actions (735 ILCS 5/13-202 (West 2008)) to just a one-year statute of limitations specifically applicable to actions brought against Pace and the other public transportation providers. *Copes*, 2015 IL App (1st) 150432, ¶ 38, 45 N.E.3d 1123 (discussing the legislature's motivation for limiting the time in which to bring an injury claim against Pace, Metra, and the CTA); 70 ILCS 3615/5.03 (West 2008) (one-year statute of limitations for actions against the Regional Transit Authority and its divisions including Pace); 70 ILCS 3605/41 (West 2008) (one-year statute of limitations for actions against the CTA).

¶ 29 Furthermore, the fact that SCR and Pace may have known that others, such as van drivers and passengers, would indirectly benefit from the minimum insurance clause in the SCR-Pace contract does not overcome the presumption that the contract was intended to directly benefit only SCR and Pace. *Martis*, 388 Ill. App. 3d at 1020, 905 N.E.2d at 924; *Barney*, 266 Ill. App. 3d at 20, 639 N.E.2d at 597.

¶ 30 James also seems to be arguing that he is a third-party beneficiary of the Empire insurance contract, because he comes within its definition of an "insured" as someone who occupied a covered auto. Assuming this is true, we fail to see how enforcing the terms of the Empire insurance contract, with its UIM limit of $50,000, would entitle James to collect more than $50,000 in UIM coverage. Nor do we see how enforcing the terms of the Empire policy would entitle James to reform the SCR-Pace contract in order to reform the Empire policy into providing a higher limit of UIM coverage. This would be a circular argument that is not supported by citation to any authority on the reformation of contracts.

¶ 31 Accordingly, we conclude that James is not a third-party beneficiary of the SCR-Pace contract. We affirm the dismissal of Pace on that basis.

¶ 32 The final defendant, Empire, contends we lack jurisdiction to review the dismissal of claims against it due to a defect in James's notice of appeal. Empire points out that it was dismissed as a party as of May 30, 2014, when the trial judge disposed of James's second amended complaint and that James's notice of appeal refers only to the subsequent order dated January 12, 2015, granting SCR's and Pace's motions to dismiss the third amended complaint. Empire cites Supreme Court Rule 302(c)(2) requiring an appellant to "specify the judgment or part thereof *** appealed from" and case law indicating that a notice of appeal confers jurisdiction to consider only the judgments or parts of judgments that are specified in the notice of appeal. Ill. S. Ct. R. 303(b)(2) (eff. Sept. 1, 2006); *General Motors Corp. v. Pappas*, 242 Ill.

2d 163, 175-76, 950 N.E.2d 1136, 1143-44 (2011) (a notice of appeal confers jurisdiction); *Atkinson v. Atkinson*, 87 Ill. 2d 174, 177-78, 429 N.E.2d 465, 466-67 (1981) (in which the Illinois Supreme Court concluded that the appellate court should not have reviewed an order awarding child custody when the notice of appeal specified only orders regarding marital property). We disagree with Empire.

¶ 33 We disagree with Empire because in paragraph 38 of his third amended complaint, James stated "JAMES adopts the prior complaints and incorporates them into this complaint, and *** re-states the [previously dismissed or stricken] counts herein" and he then expressly identified counts II through V as having been previously dismissed or stricken, which were counts directed at Empire. By referring to and adopting certain portions of his second amended complaint into his third amended complaint, James effectively preserved his arguments as to the dismissal of the counts regarding Empire and he preserved those issues for review. See *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17, 970 N.E.2d 1 (indicating that the plaintiff's failure to refer to or adopt a prior pleading in an amended pleading waived any objection to the trial court's ruling on the former complaint and that those claims were effectively abandoned and withdrawn). James's notice of appeal indicated he was appealing from the "judgment/order" dated January 12, 2015, which was the dismissal of the third amended complaint and that the relief he was seeking was for the reviewing court to "[r]everse dismissal of cause of action." The purpose of a notice of appeal is to inform the prevailing party that the other litigant seeks review of the trial court's decision. *General Motors*, 242 Ill. 2d at 176, 950 N.E.2d at 1144. A notice of appeal is sufficient to confer appellate jurisdiction when it sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal. *General Motors*, 242 Ill. 2d at 176, 950 N.E.2d at 1144. We find that by filing an appeal from the order dismissing the third amended complaint, James was also appealing from the dismissal of the restated counts from the second amended complaint. While the notice of appeal would have been more informative if it specified both the date the second amended complaint was dismissed and the date the third amended complaint was dismissed, James's notice was complete and sufficient to confer appellate jurisdiction over all the counts of the third amended complaint, including the ones directed at Empire.

¶ 34 We also disagree with Empire's jurisdiction argument because Empire was not prejudiced by the contents of James's notice of appeal. A notice of appeal is to be liberally construed and unless it contains a defect that is both prejudicial and substantive, an appellant's failure to comply with the established form of notice will not be fatal to his appeal. *General Motors*, 242 Ill. 2d at 176, 950 N.E.2d at 1144. This notice effectively states the nature of the appeal, which is to reverse the final order disposing of James's lawsuit, and it was sent to Empire's attorneys (Brian A. O'Gallagher and Kristina M. Beck of Crema, Spina, Shaughnessy, Jansen & Siegert, LLC), who have also been representing SCR and Pace throughout the trial and appellate court proceedings. Counsel initially appeared in the appellate court only for SCR and Pace, but upon receiving James's opening brief on appeal, also appeared for Empire and moved to dismiss Empire based on James's notice of appeal. After this court denied the motion without prejudice, counsel prepared and timely filed substantive briefs for all three clients. Empire has never contended it was prejudiced by the notice of appeal, and we perceive no prejudice in the timely presentation of its defense to this appeal.

¶ 35     For these two reasons, we conclude that the notice of appeal conveyed appellate jurisdiction as to the counts directed at Empire and we will review the merits of James's appeal as to that defendant. Counts II, III, IV, and V were all directed in some part at Empire.

¶ 36     James contends that as the occupant of a vehicle insured by Empire, he is an "insured" within the meaning of its policy and that, as an "insured" and injured person, he has the right to file a declaratory judgment action addressing whether he is entitled to UIM coverage from Empire. He contends there is "a strong public policy against [UIM] step-downs" as well as a public policy to "provide protection to the insured" and that these are reasons to reform Empire's UIM coverage to provide him with up to $1 million coverage. He contends "Empire [is] an innocent party" and proposes that with the judicial reformation of the insurance contract, "SCR must be forced to pay the additional (tiny) premium to Empire" that it would have paid to have the maximum UIM amount rather than the "stepped down" UIM amount.

¶ 37     Empire responds that James has no valid cause of action against the insurance company because his receipt of $50,000 from the other driver means he did not have an accident with an "underinsured motor vehicle" as that phrase is defined in the Empire policy and that there is no public policy justification for reforming the Empire policy.

¶ 38     In our opinion, Empire's argument is the correct one. James does not dispute that SCR executed a form in late 2009 intentionally reducing SCR's $1 million liability coverage to $50,000 for UIM and UM coverage. James's second amended complaint included a copy of the form. Illinois law provides conditions and procedures that insurance companies and their applicants must follow in order to effectively reduce UIM coverage below certain minimums. See, *e.g.*, *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 949 N.E.2d 639 (2011); *DeGrand v. Motors Insurance Corp.*, 146 Ill. 2d 521, 588 N.E.2d 1074 (1992); and statutes cited therein. James does not challenge the contents of Empire's UIM and UM selection form or the manner in which it was presented and executed by Empire and SCR.

¶ 39     His argument is strictly one of public policy. However, the power to declare a private contract invalid on public policy grounds is exercised sparingly and a person seeking to have an agreement invalidated on such grounds carries a " 'heavy burden.' " *Phoenix*, 242 Ill. 2d at 55, 949 N.E.2d at 645. Agreements will be voided on public policy grounds only when they are clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy or unless they are manifestly injurious to the public welfare. *Schumann-Heink v. Folsom*, 328 Ill. 321, 330, 159 N.E. 250, 254 (1927) ("Courts must act with care in extending those rules which say that a given contract is void because against public policy, since if there be one thing more than any other which public policy requires, it is that [persons] of full age and competent understanding shall have the utmost liberty of contract, and that their contracts, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by the courts."); *Phoenix*, 242 Ill. 2d at 55-56, 949 N.E.2d at 645 ("In relation to the judicial branch, the General Assembly, which speaks through the passage of legislation, occupies a 'superior position' in determining public policy," and when the General Assembly has declared the public policy of the State, the judiciary remains silent and applies the law as written.); *Groome v. Freyn Engineering Co.*, 374 Ill. 113, 124, 28 N.E.2d 274, 280 (1940) (courts strictly adhere to the principle that public policy is found in the constitution, the laws, and precedent, rather than the varying opinions of judges, lawyers, and laymen).

¶ 40     James fails to cite any authority or any facts in support of his contention that there is "a strong public policy against [UIM] step-downs" when in fact a UIM step-down is provided for

by Illinois statute. He also fails to show that the particular UIM and UM selection form used here or the manner in which the form was presented and executed by Empire and SCR are grounds for invalidating the contract.

¶ 41 He contends the $50,000 UIM coverage is contrary to public policy because the "purpose of UIM in this situation is simple: to provide benefits to only two classes of people, and no one else: the handicapped passengers in the SCR/PACE vans and the van *** drivers. Whether the UIM was $1,000,000 or it was $50,000, PACE and SCR derive no benefit." In our discussion above regarding Pace's liability, we addressed James's erroneous contention that only passengers and drivers benefit from UIM coverage.

¶ 42 Furthermore, James fails to acknowledge that (1) he is suing his employer's automobile liability insurer and (2) the workers' compensation system has been in place to provide speedy, no-fault coverage and is the exclusive form of employer-compensation for injured SCR van drivers such as him. Through that system he received temporary disability payments and a final lump settlement, which he stated was sufficient to address his injuries, and he also affirmatively stated that he would "not have the need for future medical expenses related to [his] injury." James's apparent dissatisfaction with the amount of compensation he accepted from the other driver and his own employer is not grounds for requiring his employer's automobile liability insurer, Empire, to compensate him further. He has not met the heavy burden of showing that the UIM terms should be invalidated for public policy reasons. We affirm the dismissal of Empire.

¶ 43 For the above reasons, we hold that the circuit court's rulings against James and in favor of SCR, Pace, and Empire were appropriate and we affirm those orders.

¶ 44 Affirmed.