2019 IL App (1st) 180362

FIRST DIVISION
October 21, 2019

Nos. 1-18-0362 and 1-18-0394 (cons.)

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | |
|---|---|
| MICHAEL BUTLER, MELVIN CARTER, CRAIG CURRY, JAMES HARRELL, ROBERT HARRIS, CARLTON BAILEY JONES, BRAD QUEST, JOHN MICHAEL REICHENBACH, ADAM SCHREIBER, ERIC WRIGHT, GARY ANDERSON, MICHAEL CLARK, CHRIS DIETERICH, GERALD FEEHERY, WILLIAM GAY, JEFF HERROD, JAMES JONES, ERNEST MILLS, BRUCE TAYLOR, THOMAS VAUGHN, LAWRENCE WATKINS, FELIX WRIGHT, RAHIM ABDULLAH, DOUGLAS BEAUDOIN, ROD DAVIS, MAJOR EVERETT, DAVID GALLOWAY, KENNETH GREEN, RICKY NATTIEL, MARK NICHOLS, BERNARD WHITTINGTON, JOHN L. WILLIAMS, MICHAEL WILLIAMS, GLEN YOUNG, ANTOINE CASH, GLEN EARL, JOE ODOM, CHARTIC DARBY, CENTRAL MCCLELLION, MAURICE MORRIS, GERALD WUNSCH, JEFFREY BRYANT, DAN FIKE, DAVID HADLEY, WALTER LEE (TODD) HOWARD, SEAN LOVE, CLEOPHUS MILLER, GREGORY BROWN, ALPHONSO CARREKER, WENDELL PATRICK CARTER, AL DAVIS, ERIC HIPPLE, LEMAR PARRISH, | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | Nos. 16 L 8474, 16 L 12367 16 L 12368, 16 L 12369, 16 L 12370, 16 L 8477, and 16 L 6935 |
| v. | |
| BRG SPORTS, LLC f/k/a EASTON-BELL SPORTS, LLC, EB SPORTS CORP., BRG SPORTS HOLDINGS CORP., BRG SPORTS, INC., RIDDELL SPORTS GROUP, INC., RIDDELL INC., AND ALL AMERICAN SPORTS CORPORATION, | Honorable John H. Ehrlich, Judge Presiding |

Nos. 18-0362 and 18-0394 (cons.)

|                                                                                                                                                                                                                          |   |                                              |
|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---|----------------------------------------------|
|                                                                                                                                                                                                                          | ) |                                              |
| Defendants-Appellees.                                                                                                                                                                                                    | ) |                                              |

_____

|                                                                                                                                                                                                                          |   |                                              |
|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---|----------------------------------------------|
|                                                                                                                                                                                                                          | ) |                                              |
| CHARLES ALI,                                                                                                                                                                                                             | ) | Appeal from the Circuit                      |
|                                                                                                                                                                                                                          | ) | Court of Cook County                         |
| Plaintiff-Appellant,                                                                                                                                                                                                     | ) |                                              |
|                                                                                                                                                                                                                          | ) |                                              |
| v.                                                                                                                                                                                                                       | ) |                                              |
|                                                                                                                                                                                                                          | ) |                                              |
| BRG SPORTS, LLC f/k/a EASTON-BELL SPORTS, LLC, EB SPORTS CORP., BRG SPORTS HOLDINGS CORP., BRG SPORTS, INC., RIDDELL SPORTS GROUP, INC., RIDDELL, INC., and ALL AMERICAN SPORTS CORPORATION,                              | ) | No. 17 L 7251                                |
|                                                                                                                                                                                                                          | ) |                                              |
|                                                                                                                                                                                                                          | ) | Honorable John H. Ehrlich,                   |
| Defendants-Appellees.                                                                                                                                                                                                    | ) | Judge Presiding                              |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion. Justices Pierce and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    These appeals stem from an important issue facing professional athletics and contemporary culture as a whole: former professional football players developing significant neurological disorders after sustaining repeated concussions from playing the game. Evolving scientific and medical research has uncovered a link between a person suffering repeated blows to the head and that person developing Chronic Traumatic Encephalopathy and a host of other neurological impairments.

¶ 2    The plaintiffs in these cases are former professional football players who have sustained numerous concussions and are suffering the attendant neurological impairments. The plaintiffs have already sued the NFL in a federal class action case and have entered into a settlement with the NFL to address their grievances. The former players, however, now seek redress from defendants, the manufacturers and designers of the helmets they wore while playing football.

The plaintiffs allege that the helmet manufacturers have long known about the dangers and the harmful effects of repeated concussive and subconcussive traumas, but never warned the users of their helmets about the dangers, instead representing that their helmets were protecting the players.

¶ 3     The defendant-helmet manufacturers moved to dismiss these cases on the ground that the cases are barred by the two-year statute of limitations governing personal injury actions in Illinois. In response, plaintiffs argued that the cases are not time barred because the suits were filed within two years of the players learning about the injuries for which they seek redress. The trial court found that, because the players had already sued the NFL more than two years before filing these cases, the players knew about their injuries and, therefore, could have sued the helmet manufacturers at the same time—more than two years before filing these cases. Plaintiffs appeal the dismissal of their claims. We hold that the plaintiffs' claims are indeed untimely and, accordingly, we affirm.

¶ 4                                  I. BACKGROUND

¶ 5     *Introduction*

¶ 6     The plaintiffs in these cases are 54 former professional football players who are suffering neurological effects from sustaining numerous concussive and subconcussive traumas while playing professional football. The National Football League has settled lawsuits with classes of former professional football players, including the plaintiffs herein, who sought redress for claims that the NFL failed to inform them about and protect them from the risks of concussions in football. See, *e.g.*, *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410 (3d Cir. 2016). The players' suits were consolidated into a federal class action case which eventually consisted of about 5,000 former players who had filed substantially similar

lawsuits. *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351, 361 (E.D. Pa. 2015). All of the players involved in these appeals were also parties to the federal class action case against the NFL.

¶ 7    In the cases now before us, dozens of plaintiffs are suing Riddell and its associated entities (collectively "Riddell" or "defendants"). Riddell is a manufacturer of sports equipment and is the NFL's officially licensed helmet provider. Plaintiffs allege that Riddell conspired with the NFL to misinform players about the risks of long-term brain damage that can result from playing football, even with a helmet. The plaintiffs maintain that Riddell has long known about the dangers and the harmful effects of repeated concussive and subconcussive traumas, but that it never warned the users of its helmets about such dangers. The plaintiffs pleaded that each of them has been or will be diagnosed with a neurodegenerative disorder as a result of playing football while using a Riddell helmet.

¶ 8    *Butler Appeal, 18-0362*

¶ 9    In this appeal, there are seven groups of plaintiff-appellants that total 53 retired NFL players. For purposes of this appeal, there is no basis on which to distinguish between the different groups of *Butler* appellants—they are similarly situated. However, the breakdown is as follows. The Boone plaintiffs are 10 former players that filed a complaint on July 13, 2016. The Anderson plaintiffs are 12 former players that filed a complaint on August 25, 2016. The Abdullah plaintiffs are 12 former players that filed a complaint on August 25, 2016. The Cash plaintiffs are 3 former players that filed a complaint on December 19, 2016. The Coxson plaintiffs are 4 former players that filed a complaint on December 19, 2016. The Bryant plaintiffs are 6 former players that filed a complaint on December 19, 2016. The Brown plaintiffs are 6 former players that filed a complaint on December 19, 2016.

¶ 10    These 53 plaintiffs were all involved in the federal multidistrict concussion injury litigation in the Eastern District of Pennsylvania (*In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351 (E.D. Pa. 2015)). Between the time of the plaintiffs' participation in the federal litigation and the time that the trial court dismissed their complaints in these cases, approximately half of the 53 plaintiffs had been diagnosed with dementia or Alzheimer's disease. The plaintiffs who have not been diagnosed with a specific neurodegenerative disorder allege that they are exhibiting symptoms of their latent brain injuries and that they will be diagnosed with a specific neurodegenerative disorder at some point.

¶ 11    These plaintiffs argue that the statute of limitations for the specific neurodegenerative disorder they now face could not have accrued until that plaintiff was diagnosed with the disorder. The plaintiffs maintain that they did not and could not have alleged that they were suffering from one of these disorders when they were participating in the federal class action case because they had not yet been diagnosed with being afflicted by one of those particular disorders.

¶ 12    *Ali Appeal, 18-0394*

¶ 13    In this appeal, plaintiff-appellant Charles Ali is the lone plaintiff. He is similarly situated with the plaintiffs in the *Butler* appeal in all important respects. Like the plaintiffs in the *Butler* appeal, Ali was involved in the federal multidistrict concussion injury litigation in the Eastern District of Pennsylvania (*In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351 (E.D. Pa. 2015)). He was formally diagnosed with dementia in 2015—after his participation in the federal litigation ended. Like the plaintiffs in the *Butler* appeal, Ali argues that only upon his diagnosis with dementia could his statute of limitations be triggered as to *that injury.* All of the issues raised in the *Ali* appeal are identical to those raised in the *Butler* appeal,

5

it is just filed separately.

¶ 14    *Issues Now Before the Court*

¶ 15    In the federal class action case against the NFL in which all of these plaintiffs were involved, the plaintiffs therein also named Riddell as a defendant. The plaintiffs in that case claimed that Riddell should be liable for the defective design of helmets. While Riddell was sued in that federal class action case, it was not a party to the settlement. *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351, 362 n. 2 (E.D. Pa. 2015). Even though the plaintiffs in this case had the opportunity to do so, none of them asserted claims against Riddell in the federal class action case, pursuing only claims against the NFL.

¶ 16    Riddell moved to dismiss these cases in the circuit court arguing that the claims the plaintiffs now assert are barred by the statute of limitations. The statute of limitations for the plaintiffs' principal claims for personal injury is two years.[1] There is no dispute that the concussions the players suffered that were the impetus for the harms the players now face occurred more than two years before this case was filed. The question in these cases, however, is when did the cause of action *accrue* for the neurological disorders the players now face and for which they now seek redress?

¶ 17    Plaintiffs contend that the statute of limitations for their claims against the helmet manufacturers did not begin to run until the players manifested the specific neurological impairment for which they now seek damages. The plaintiffs argue that the causes of action they assert in these cases accrued no earlier than when they were *diagnosed* with one of the neurodegenerative disorders caused by the head traumas that they suffered. On the other side, the defendant-helmet manufacturers argue that the causes of action must have accrued earlier.

---

[1] Plaintiffs also have a claim for fraudulent concealment which they claim is governed by a five-year statute of limitations.

Defendants contend that the statute of limitations accrued at least as early as when the plaintiffs joined and participated in the federal multidistrict litigation in which the plaintiffs alleged to have been injured by concussive and subconcussive trauma and alleged that the injury had been wrongfully caused.

¶ 18 The circuit court dismissed the plaintiffs' claims finding them to be barred by the statute of limitations. The circuit court held that when the plaintiffs joined the federal class action case, they "would have had to have had knowledge that they had both been injured and it had been wrongfully caused because otherwise they wouldn't have filed a claim." Plaintiffs now appeal.

¶ 19 II. ANALYSIS

¶ 20 *A. The Discovery Rule*

¶ 21 1. Standard to apply—point of accrual

¶ 22 These appeals require us to examine and apply the "discovery rule." The purpose of the discovery rule is to postpone the starting of a suit-limitations period until the injured party knows or should know of his injury. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). The event that triggers the running of the statutory limitations period is not the first knowledge that the injured person has of his injury, and, at the other extreme, it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered. *Id*. at 415. Rather, the statutory limitations period starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. *Id*.

¶ 23 Plaintiffs argue that their personal injury claims for the latent brain injuries for which they now seek redress should survive a statute of limitations challenge because the plaintiffs are just now discovering the harm. They contend that "the statute of limitations cannot run until they *** discover their latent brain injury." Thus, plaintiffs urge us to apply the discovery rule and

hold that their causes of action accrued at the time they were diagnosed with a particular neurodegenerative disorder.

¶ 24 The basic premise of plaintiffs' position is that they did not "discover" the injury for which they now seek recovery—a latent neurodegenerative brain disease—until they were diagnosed with it. The appeals are focused on their knowledge of the injury, not on their knowledge of the injury's putatively wrongful cause.

¶ 25 To support their position that diagnosis should be the point of accrual for their causes of action, plaintiffs rely heavily on case law that has developed in our courts' disposition of asbestos cases. In cases dealing with asbestos exposure, courts in Illinois and around the country have frequently applied the discovery rule to peg the point of accrual for a cause of action at the point of the plaintiff being diagnosed with a disease resulting from much earlier exposures.

¶ 26 As opposed to a sudden traumatic event which causes the statutory limitations period to begin running immediately, when a plaintiff's injury does not manifest itself until sometime after the defendant's wrongful act occurred, the plaintiff's cause of action is said to accrue when the plaintiff knows or reasonably should know that he has been injured by the wrongful conduct of another. *VaSalle v. Celotex Corp.*, 161 Ill. App. 3d 808, 810 (1987). When a plaintiff's injuries are the result of "several ostensibly innocuous circumstances," the plaintiff's cause of action accrues when the plaintiff knows or reasonably should know that he has been injured by the wrongful conduct of another. *Id.*

¶ 27 In *VaSalle v. Celotex Corp.*, 161 Ill. App. 3d 808, 812-814 (1987), the plaintiff developed asbestosis in 1972. He filed a disability claim for his asbestosis in 1976 signifying his knowledge of the harmful exposure to asbestos. In 1979, he was diagnosed with lung cancer. The plaintiff filed a lawsuit in 1980 seeking to recover for his development of lung cancer, claiming that his

exposure to asbestos was the cause. A majority of this court held that the plaintiff's development of asbestosis in 1972 was a legal injury separate and distinct from his development of lung cancer in 1979 so that the statute of limitations for filing a claim for lung cancer began to run when the plaintiff was diagnosed with lung cancer, not when he learned he was suffering from asbestosis. *VaSalle*, 161 Ill. App. 3d at 812.[2]

¶ 28    According to plaintiffs, even though they alleged the existence of "head problems" when they sued the NFL, there was "no formal diagnoses of neurodegenerative disease pled at that time." They argue that even if they acknowledged that they exhibited *symptoms* of neurodegenerative diseases prior to their diagnoses of latent brain injuries, it is the diagnosis *of a particular disorder* that causes the statute of limitations to begin to run for a claim to recover for that disorder (citing *VaSalle v. Celotex Corp.*, 161 Ill. App. 3d 808 (1987) and *Urie v. Thompson*, 337 U.S. 163 (1949)).

¶ 29    Pegging the date of diagnosis as the date of discovery for statute of limitations purposes, plaintiffs argue that their filings in the federal multidistrict litigation cannot be said to evidence knowledge sufficient for the statute of limitations to begin to run for their current claims. Plaintiffs maintain that the statute of limitations for the injuries for which they now seek redress began to run when they were made aware of a diagnosis of a particular latent neurodegenerative brain injury—a point in time after their participation in the federal class actions ceased and within two years of when they filed these cases.

¶ 30    On the other side of the issue, our supreme court has held that a plaintiff who knows he is injured need not know the exact nature or extent of his injuries in order for the statute of limitations to begin running. In *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 367 (1995), a

---

[2] One Justice dissented in *VaSalle* and would have found the claim to have been barred by the statute of limitations. See *VaSalle*, 161 Ill. App. 3d at 814-15 (Jiganti, J., dissenting).

plaintiff knew that she suffered injuries at the time of a car accident. The plaintiff tacitly admitted that she could have filed suit for some of her injuries when the accident happened, but she waited four years to file suit until after she was diagnosed with a more serious condition, reflex sympathetic dystrophy. Our supreme court explained that when the plaintiff filed suit upon learning of her more serious injury, her claim was filed too late. The court observed that the case involved "not a plaintiff who failed to discover *any* injury, but a plaintiff who failed to discover the full extent of her injuries before the statute of limitations expired." *Id*. (Emphasis in original).

¶ 31 The *Golla* court explained that "[t]here is no requirement that a plaintiff must discover the full extent of her injuries before the statute of limitations begins to run" and, thus, "[b]ecause the plaintiff knew or should have known at the time of the accident both that she was injured and that the injury may have been wrongfully caused, the limitations period commenced at that time." *Id*. The dissent in *VaSalle* offered a similar approach. The dissenting justice stated that that court should have found the plaintiff's claim for lung cancer from asbestos exposure to be time barred because the plaintiff should not be permitted to pursue a claim for each distinct injury resulting from the same wrongful conduct. *VaSalle*, 161 Ill. App. 3d at 815 (Jiganti, J., dissenting).

¶ 32 Under the line of reasoning embodied in *Golla* and in the *VaSalle* dissent, defendants argue that the plaintiffs' allegations in the federal class action case demonstrate that they discovered that they were injured more than two years before filing these cases. Defendants contend that the plaintiffs clearly knew that they were injured from the head traumas they suffered while playing football and that the plaintiffs had sufficient information about their injuries' wrongful cause as evidenced by their suing the NFL.

¶ 33 These cases do not demand that we decide whether the *VaSalle* line of reasoning or the

*Golla* line of reasoning is more suitable for addressing statute of limitations questions stemming from repeated head traumas that result in latent neurological disorders. We see merit in plaintiffs' argument that the line of reasoning applied in *VaSalle* may very well be the most apt framework for latent brain injury litigation. Due to the "several innocuous" brain traumas the plaintiffs suffered over the years and the slow-developing neurodegenerative disorders at issue, the blunt and straightforward rule applied in *Golla* may not be the most suitable precedent to apply in sports-related latent brain injury cases. It is not difficult to see unjust results if *Golla* were strictly applied to such cases. Plaintiffs in such cases could be deprived of any remedy before they could know about the severe afflictions that would follow the seemingly innocuous symptomatic discomforts they faced. Those plaintiffs' claims could be said to accrue on the basis that they had headaches or some other minor ailment when they could not reasonably know about a significant neurodegenerative disorder lurking that might not manifest until years later. *See, e.g.*, *McCullough v. World Wrestling Entertainment, Inc.*, 172 F. Supp. 3d 528, 547 (D. Conn. 2016) (knowledge about a single concussion is not the same as knowledge about CTE or another degenerative neurological disorder).

¶ 34    However, even analyzing the facts presented here through the lens of *VaSalle*, the circumstances here direct a different result than the result that obtained in that case. In this case, the allegations and the conduct of the plaintiffs in the federal class action case establish that the plaintiffs had sufficient knowledge to interpose the claims that they now pursue against Riddell as early as the point in which they pursued their claims against the NFL—a point more than two years before plaintiffs filed these cases.

¶ 35    2. Evidence of plaintiffs knowing about their injuries.

¶ 36    As stated previously, plaintiffs' appeal is based on their supposed lack of knowledge

about their injury. They do not raise any issue relating to their knowledge of the wrongful cause element for the accrual of a statute of limitations under the discovery rule. It is apparent that the "injury" for which plaintiffs seek redress in this case is the same injury for which they sought redress in the federal class action case. It is similarly apparent that plaintiffs knew about those injuries when they sued the NFL so that, as a matter of law, the statute of limitations accrued at least as early as the plaintiffs' class action filings. Because plaintiffs' class action filings occurred more than two years before these cases were filed, the claims at issue in these cases are barred by the applicable statute of limitations.

¶ 37    In the federal class action case, plaintiffs sought redress for both current and future diagnoses of disorders resulting from the head trauma they suffered while playing in the NFL. In this case plaintiffs seek redress for "the long-term, latent brain damage inflicted upon them." In both the master class action complaint and in each plaintiff's short form complaint[3] the plaintiffs sought redress not for *the symptoms* of a latent brain injury, but for the long-term brain injuries themselves and their attendant manifestations, the same injuries for which they seek redress here.

¶ 38    In the federal class action master complaint, the plaintiffs alleged that they "have suffered and continue to suffer brain injuries." The plaintiffs went on to allege that those brain injuries result in "early onset Alzheimer's disease, dementia, depression, deficits in cognitive functioning, reduced processing speed, attention and reasoning, loss of memory, sleeplessness, mood swings, personality changes, and the debilitating and latent disease known as Chronic Traumatic Encephalopathy (CTE)." Here, in the very first paragraph of the master complaint, for example, the plaintiffs stated that "[t]his case seeks a declaration of liability, injunctive relief, medical monitoring, and financial compensation for the *long-term chronic injuries*, financial

---

[3] Only 51 of the 53 plaintiffs in these appeals filed short-form complaints, but each of the 51 plaintiff's individually alleged that he was then suffering the symptoms of a brain injury, but that the injury was latent and would continue to develop over time.

losses, expenses, and intangible losses suffered by the Plaintiffs and Plaintiffs' Spouses as a result of the Defendants' intentional tortious misconduct, including fraud, intentional misrepresentation, and negligence." (Emphasis added). The plaintiffs alleged that the NFL's negligence has resulted in them sustaining "brain injuries that are progressive and latent." The plaintiffs sought damages for both present and future manifesting conditions from the brain injuries from which they all already had allegedly suffered.

¶ 39    In their federal class action short-form complaints, each plaintiff incorporated the allegations of the master complaint and further alleged that he was suffering symptoms of a brain injury. Each plaintiff then went on to allege that the underlying brain injuries from which he was then-currently suffering symptoms represent "injuries that are latent" and that will "continue to develop over time." One form of relief the plaintiffs each requested in their short-form complaint here was for "medical monitoring" evincing their individual knowledge of future manifestations of the then-known injuries.

¶ 40    The list of symptoms the plaintiffs were experiencing at the time they participated in the federal class action case is extensive and varied, but all of the plaintiffs alleged the existence of symptoms of their injuries such as headaches, loss of memory, sleeping problems, and depression. Some of the plaintiffs alleged the existence of a permanent brain injury, neurological disorder, or the increased risk of further neurodegenerative disorders, while other plaintiffs had not yet been diagnosed with any particular neurological disorder at the time. Nonetheless, even the plaintiffs who had not been diagnosed with a specific neurological disorder claimed that the symptoms they were experiencing were representative of a more serious, long-term and progressive condition with which they were afflicted. In the federal class action case, the plaintiffs herein each sought redress for the underlying permanent brain injuries, including even

the yet-to-be-diagnosed manifestations of those injuries.

¶ 41    Plaintiffs argue that, in the federal class action case, they only alleged that they were suffering *the symptoms* of a neurological disorder and in this case they are alleging that they are suffering from *a diagnosed* neurological disorder. It is true that none of the plaintiffs here specifically alleged a diagnosis of a neurodegenerative brain disease in the federal class action— they could not have done so at the time. But regardless, it is clear that the plaintiffs individually and the class as a whole were pursuing a recovery for both present and future diagnoses of neurodegenerative disorders. Plaintiffs were not involved in the federal class action case to seek redress for existing symptoms: headaches, sleeping problems, *et cetera*. They were pursuing claims for the more insidious injuries that those symptoms represented and the future manifestations of those injuries. The allegations in the federal class action case establish that plaintiffs were seeking recourse for existing and impending manifestations of their latent brain injuries and that they knew such injuries existed or would exist.

¶ 42    Plaintiffs attempt to argue that they were not aware of the injuries asserted in these cases when they participated in the federal class action case because the injuries had not been diagnosed at the time of the federal class action. The allegations in the federal class action case make clear that plaintiffs were aware of the injuries for which they now pursue recompense because they expressly sought recovery for future diagnoses from the head trauma that gave rise to both these cases and the federal class action case. Plaintiffs knew that future diagnoses were a possibility or even a probability and they accounted for those injuries when they made claims against the NFL—an incontrovertible admission of knowledge.

¶ 43    Our courts have previously addressed prior filings and their impact on the statute of limitations. Compare *Moon v. Rhode*, 2016 IL 119572, ¶ 50 with *Heredia v. O'Brien*, 2015 IL

App (1st) 141952, ¶¶ 26-28. In *Moon*, our supreme court held that even though the plaintiff therein had filed a previous lawsuit, there was a question of fact regarding when the plaintiff was possessed of sufficient knowledge to cause the statute of limitations to accrue. *Moon*, 2016 IL 119572, ¶¶ 50-53. In *Heredia*, we observed that the record established that, at the very latest, the plaintiff therein knew or reasonably should have known that the negligent performance of a medical procedure was responsible for her injury at the time she filed her initial complaint. *Heredia*, 2015 IL App (1st) 141952, ¶¶ 26-27. Her later-filed complaint was untimely because her initial filing demonstrated that she knew her injury and its wrongful cause when she first filed suit. *Id*. at ¶ 28.

¶ 44    Our analysis and holding in *Heredia* more aptly aligns with the circumstances presented in this case. Here, plaintiffs' participation in the federal class action and the case's unmistakable aim of recovering for latent brain injuries incontrovertibly establishes that plaintiffs knew that they were injured with long-term injuries and knew that those injuries were wrongfully caused. Unlike in *Moon*, we do not need a factual determination to be made as to whether plaintiffs had sufficient information two years prior to filing because, here, the plaintiffs themselves asserted the sufficiency of their knowledge in their suit against the NFL.

¶ 45    3. Plaintiffs propose the adoption of an unworkable limitations regime.

¶ 46    There are practical considerations and policy reasons to support a holding that plaintiffs' claims here are barred. Were we to allow plaintiffs to pursue their claims in this case, we would be endorsing a practice of resolving this type of case in a piecemeal fashion. Where it is practicable, courts should endeavor to promote judicial economy and avoid piecemeal litigation. See *Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.*, 331 Ill. App. 3d 87, 95 (2002); *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 99 (2004). Plaintiffs advance a theory in

which the discovery rule would restart the limitations clock every time one of the plaintiffs develops a new condition stemming from the same original harm. Such a result would create significant confusion about when claims are justiciable and it would hamper the very aim of statutes of limitations—to have some certainty and to eliminate open-ended liability.

¶ 47    Based on plaintiffs' interpretation of what the rule should be, the plaintiffs would be able to sue again and again for any other symptoms or diagnoses that manifest in the future. For example, under plaintiffs' theory, after successfully prosecuting this case they would be able to sue Riddell again decades later for the same alleged wrongful conduct under a claim such as wrongful death. Plaintiffs could perhaps sue again next year if their diagnosis changed from dementia to Alzheimer's disease. Or again at another time when plaintiffs find another defendant that might be responsible for their latent injuries. There are not articulable standards to determine what would be sufficient to allow a plaintiff to bring more claims at a later time. Plaintiffs suggest that any new diagnosis would be sufficient for them to file another successive action, and they also suggest that any new symptom might be sufficient. These results are untenable.

¶ 48    Even at this point, approximately half of the 53 plaintiffs have received a diagnosis of a specific neurodegenerative disorder like dementia or Alzheimer's disease, but half have not. Half of the plaintiffs are yet to be diagnosed with any specific neurological disorder, alleging only that they will have such a diagnosis at some point in the future. Under plaintiffs' own proposed standard, half of the plaintiffs, the half who do not yet have a specific qualifying neurological condition, are asserting premature claims. That half of the plaintiffs who have not been diagnosed with any specific neurological disorder have the exact same level of knowledge that they did at the time the federal class action case was ongoing—they have symptoms but are yet to be diagnosed with a discrete neurodegenerative disorder. How could that half of the plaintiffs

16

be said to have sufficient knowledge of their injuries now, but not during their participation in the federal class action case?

¶ 49    A major problem with plaintiffs' theory on the discovery rule is evidenced by their own claims made on appeal. Plaintiffs state that they "simply did not (and still may not) comprehend the damage done to them due to their exposure to repetitive head traumas while playing football." Plaintiffs maintain that "these players are just now beginning to discover the damage that has been done." They suggest that they now have an injury giving rise to a justiciable claim but that they might have other justiciable injuries in the future, all derived from the same purported wrongful conduct of defendants that ceased occurring long ago. Plaintiffs admit that they might still not know their injuries and might need to sue again when they discover some new manifestation of the harm. Potential liability remains open-ended forever in contravention of all statute of limitations jurisprudence. Fortunately for plaintiffs, the settlement crafted by the players and the NFL eliminates the type of problems that the multiplicity of litigation they propose would create. The settlement provides an enduring remedy for plaintiffs' injuries (see *infra* ¶ 59). But, at the same time, the fact that plaintiffs were seeking such an enduring remedy demonstrates that they knew about the injuries that are the basis for these cases insofar as the accrual of the statute of limitations is concerned.

¶ 50    <u>4. Plaintiffs had the opportunity to pursue claims against Riddell and chose not to do so.</u>

¶ 51    During the course of the federal class action case, plaintiffs were all given a short-form complaint in which to submit basic information about their claims to the court. The short-form complaints gave each plaintiff the option to state whether he had a claim against Riddell—it was listed as one of the potential defendants—and to detail what those claims were. While some of the plaintiffs in the class action case chose to lodge claims against Riddell, none of the plaintiffs

in the cases now before us made a claim against Riddell. None of these 53 plaintiffs even just simply checked a box on the short-form complaint to indicate that they were aggrieved by Riddell. In addition, the master complaint contained allegations against Riddell, but none of the plaintiffs that are interposing claims in this case chose to pursue those allegations against Riddell at that time, despite adopting all of the allegations from the master complaint into their individualized short-form complaints. The plaintiffs each made a conscious decision to voluntarily and intentionally not pursue Riddell for the brain injuries from which the plaintiffs are suffering.

¶ 52    Plaintiffs already compromised with the NFL for the claims they make against Riddell now—the settlement includes compensation for both current and future diagnoses of injuries from the latent brain injuries. But when plaintiffs had an option to pursue claims against Riddell in the federal class action, all of the plaintiffs in these cases opted to pursue a claim against the NFL only. Plaintiffs were undoubtedly on notice of potential claims against Riddell when they joined a lawsuit for these same injuries in which Riddell was a named defendant.

¶ 53    At the time of the federal class action case, the plaintiffs could have asserted against Riddell claims that *they did assert* against the NFL. Plaintiffs had sufficient knowledge to assert claims against the NFL, so they had sufficient knowledge to assert them against Riddell. There is no newly discovered information that would make the discovery of a claim against Riddell any different than the discovery of a claim against the NFL. Plaintiffs offer no explanation for why we should treat the NFL and Riddell any differently as defendants where all of the harm is alleged to have occurred at the same time for both defendants. Plaintiffs chose to enforce their claims against the NFL only and, despite being presented with the opportunity, made a conscious decision to not pursue any claims against Riddell.

¶ 54    5. Plaintiffs are not without a remedy. They already settled for these injuries with the NFL.

¶ 55    To be clear, plaintiffs are not without a remedy here. They have already secured a remedy for the harm alleged in these cases in their settlement with the NFL. And they had the requisite knowledge and the opportunity to seek the same remedy against Riddell back then, but did not pursue it. The discovery rule cannot be used to save plaintiffs' untimely claims.

¶ 56    When the plaintiffs here sued the NFL, they sued for present *and* latent injuries. In the federal class action case the plaintiffs alleged that they "have sustained brain injuries that are progressive and latent." They alleged that their latent brain injuries "have developed and continue to develop over time."

¶ 57    The federal district court approved the settlement between plaintiffs and the NFL. *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351 (E.D. Pa. 2015). The settlement provides a remedy for future claims, claims like those the plaintiffs are now pursuing. The main portion of the settlement is an "uncapped monetary award fund" that provides compensation to players who submit proof of certain diagnoses. The monetary award fund is uncapped and will remain in place for 65 years. Any player that shows that he has been diagnosed with a qualifying disorder during that time period is entitled to an award. That award applies to diagnoses that are made after the settlement was reached. If, after receiving an initial award, a retired player receives a more serious diagnosis, he will receive a supplemental award. *Id*. at 395.

¶ 58    Plaintiffs could not sue the NFL for the injuries asserted here—the federal class action case encompassed future diagnoses. Plaintiffs provide no reasoned basis on which we could permit them to pursue the claims against Riddell for the exact same injuries that they claimed to

have knowledge about more than two years before filing these cases. Plaintiffs have had a recovery for these injuries, but they opted not to seek a recovery against Riddell when they had the opportunity.

¶ 59    The settlement shows that the parties were keenly aware of future deterioration and future diagnoses. The settlement was a satisfaction and a compromise of both present and future manifestations of the harm alleged. The agreement was crafted with future diagnoses in mind. "Retired Players who receive Qualifying Diagnoses in the future will be on equal footing with those who are currently suffering." *Id*. at 377. "[T]he Settlement provides Supplemental Monetary Awards for worsening symptoms. Retired Players who receive more severe Qualifying Diagnoses after receiving initial Monetary Awards are entitled to supplemental payments." *Id*. The plaintiffs compromised not only then-present diagnoses, but future diagnoses as well. The plaintiffs cannot allege that they did not know about the injuries at issue in this case when they already sued for and settled for those injuries. There can be no factual dispute that plaintiffs had sufficient knowledge to trigger the statute of limitations.

¶ 60                            *B. Fraudulent Concealment*

¶ 61    Plaintiffs advocate for the application of a five-year statute of limitations for fraudulent concealment. Plaintiffs alternatively refer to their invocation of fraudulent concealment as a freestanding cause of action and then at other times refer to fraudulent concealment being asserted as a means for tolling the statute of limitations. For example, in their reply brief, plaintiffs argue in one sentence that "Plaintiffs-Appellants sufficiently allege fraudulent concealment as a cause of action" and then in the next sentence they cite the statute that extends a statute of limitations when the person who would be liable fraudulently conceals the existence of the cause of action (see 735 ILCS 5/13-215 (West 2016)). Because it appears that plaintiffs

are seeking to invoke fraudulent concealment as a tolling mechanism for an otherwise untimely personal injury claim, we will proceed under that framework rather than looking at fraudulent concealment itself as a claim.

¶ 62    Plaintiffs argue that Riddell's conduct "prevented [them] from discovering [that they] had a claim against the helmet manufacturer." Thus, plaintiffs argue, they had five years from the time they filed their complaints in the federal class action case to file their complaints in this case. The Code of Civil Procedure provides that "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2016).

¶ 63    Our supreme court has made clear that an allegation of fraudulent concealment does not give a plaintiff an automatic five-year extension for bringing a claim once the plaintiff has knowledge of the claim. "If at the time the plaintiff discovers the fraudulent concealment a reasonable time remains within the applicable statute of limitations, section 13-215 does not toll the running of the limitation period." *Morris v. Margulis*, 197 Ill. 2d 28, 38 (2001). Once a party discovers the "fraud," it is no longer concealed, and if time remains within which to file the action, the Code of Civil Procedure does not operate to toll the limitations period. *Id.*

¶ 64    Plaintiffs allege that defendants concealed their cause of action during the decades leading up to the discovery of their injuries. Plaintiffs do not allege that defendants did anything to conceal the causes of action from the time plaintiffs had sufficient knowledge to file claims against the NFL. In the federal class action case, plaintiffs alleged that the NFL and Riddell made material misrepresentations about the harms the players faced. Those same alleged

21

misrepresentations, that pre-date the federal class action case, are the basis for plaintiffs fraudulent concealment assertion here.

¶ 65    However, while professing knowledge of the facts giving rise to the supposed fraudulent concealment, plaintiffs still did not file these cases for more than two years after suing the NFL. Plaintiffs have alleged nothing relating to Riddell's conduct once the federal class action case was filed that would have prevented them from filing these cases within two years thereof. Even after plaintiffs filed complaints against the NFL and had the requisite knowledge to file claims against Riddell, they still did not pursue claims against Riddell when they were presented with short-form complaints to complete. Nothing that Riddell did caused plaintiffs to disregard them as a potential tortfeasor. Allegations of fraud that occurred before the federal class action suit was filed cannot save plaintiffs' claims. See *id.*

¶ 66    There is no allegation that Riddell concealed the existence of any claim against it by these plaintiffs once the class action was filed. All of the allegations about Riddell's wrongful conduct in "concealment" are for acts and omissions that allegedly occurred before the federal class action was filed. Plaintiffs are at least charged with knowledge at the point that they joined a class of plaintiffs that was alleging wrongdoing against Riddell in their complaint and that specifically addressed plaintiffs' knowledge of the acts that they now rely upon as a basis for claiming that their claims were fraudulently concealed.

¶ 67    Moreover, plaintiffs argue that defendants fraudulently concealed their causes of action because defendants failed to inform players of the dangers of the helmets while instead promoting their helmets and advertising the safety and quality of the helmets. Those allegations do not constitute the fraudulent concealment of a cause of action. Plaintiffs have not even alleged any specific contact with Riddell, let alone that Riddell took acts designed to prevent them from

22

discovering causes of action.

¶ 68    To be entitled to fraudulent concealment tolling, it is necessary to show affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim. *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 97. Even if Riddell promoted the safety of its products in the past, it did nothing to lull the plaintiffs into not filing suit or discovering their harm or its wrongful cause.

¶ 69                    *C. Plaintiffs' Post-Dismissal Request for Leave to Amend*

¶ 70    After their claims were dismissed as time barred, plaintiffs sought to amend their complaints to include specific allegations about their neurodegenerative disease diagnoses and the dates of their diagnoses. However, plaintiffs fail to explain how the proposed amendment would save their claims. The proposed amendment would have, in fact, been futile. The outcome of the case is not dependent on plaintiffs' diagnoses or non-diagnoses. It is based on plaintiffs' knowledge years ago that they were injured and that their injuries were wrongfully caused— knowledge that plaintiffs incontrovertibly possessed more than two years before filing these cases.

¶ 71    Leave to amend may be denied where the proposed amendment would be futile. *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 69. Whether to grant leave to amend is a decision left to the trial court's discretion. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351 (2002). The amendment plaintiffs claim that they should have been permitted to file would not have cured the defects in their complaint.

¶ 72    In addition, plaintiffs failed to submit a proposed amended complaint to support a request for leave to amend. Including a proposed amended complaint is generally required for a party to demonstrate that it should have been granted leave to amend. *Morris v. Ameritech Illinois*, 337

Ill. App. 3d 40, 51 (2003). Nevertheless, because the amendment that plaintiffs envision would not have cured or even addressed the fatal flaw in the plaintiffs' pleadings, the trial court did not abuse its discretion when it denied plaintiffs the opportunity to amend.

¶ 73                                 III. CONCLUSION

¶ 74    Accordingly, we affirm.

¶ 75    Affirmed.