2019 IL App (1st) 180397

FIRST DIVISION
October 21, 2019

No. 1-18-0397

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| HARUKI NAKAMURA, | ) | Appeal from the Circuit |
| | ) | Court of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRG SPORTS, LLC f/k/a EASTON-BELL SPORTS, | ) | |
| LLC, EB SPORTS CORP., BRG SPORTS HOLDINGS | ) | No. 17 L 10123 |
| CORP., BRG SPORTS, INC., RIDDELL SPORTS | ) | |
| GROUP, INC., RIDDELL, INC., and ALL AMERICAN | ) | |
| SPORTS CORPORATION, | ) | |
| | ) | Honorable John H. Ehrlich, |
| Defendants-Appellees. | ) | Judge Presiding |

PRESIDING JUSTICE GRIFFIN delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Like the other opinion filed simultaneously with this one,[1] the issue in this appeal

concerns a former professional football player who sustained repeated concussions while playing

football. Evolving scientific and medical research has uncovered a link between a person

suffering repeated blows to the head and that person developing Chronic Traumatic

_____

[1] This appeal is related to the appeal disposed of in a simultaneously filed opinion, *Butler v. BRG Sports, LLC*, 2019 IL App (1st) 180362. This appeal, however, raises different issues than those raised in *Butler*, so we have filed this separate opinion.

Encephalopathy and a host of other neurological impairments. The former player, plaintiff Haruki Nakamura, is suing the defendant-helmet manufacturers for the significant medical conditions he has developed as a result of the head trauma he endured while playing football.

¶ 2    Plaintiff filed a disability insurance claim with an insurance company in 2013 when he suffered one particularly severe concussion that ultimately ended his career. When plaintiff filed this suit, defendants responded that the case was barred by the two-year statute of limitations that governs personal injury actions in Illinois. Defendants argue that plaintiff knew about his injuries when he filed the insurance claim in 2013 and became involved in litigation in connection with that claim. Thus, defendants argue, the statute of limitations began to run more than two years before this case was filed in 2017, so this case is untimely.

¶ 3    The trial court agreed with defendants' argument and dismissed the case. We find that, at a minimum, the allegations at least leave open the possibility that there is a question of fact as to whether plaintiff's disability claim and his conduct associated with that claim caused the statute of limitations to begin to run for the harm for which plaintiff now seeks redress. Accordingly, we reverse the trial court's dismissal of plaintiff's claims and we remand the case to the trial court for further proceedings.

¶ 4                        I. BACKGROUND

¶ 5    Plaintiff Haruki Nakamura is a former professional football player who sustained multiple concussions while playing football. He played six seasons in the National Football League, playing for both the Baltimore Ravens and the Carolina Panthers. In a preseason game on August 29, 2013, plaintiff suffered an acute concussion. Plaintiff was taken to the hospital and he was diagnosed with a concussion. In the following months, plaintiff's condition worsened and he experienced headaches, impaired cognition, visual changes, fatigue, depression, and suicidal

ideation. Plaintiff was released from his contract by the Carolina Panthers and he entered into a settlement with the team for money in exchange for a release of any claims he might have had against the team.

¶ 6    The concussion that plaintiff suffered in August 2013 eventually ended his career. Plaintiff filed a disability insurance claim on November 8, 2013 under a policy issued by Lloyd's of London. In furtherance of his claim with Lloyd's of London, plaintiff stated that he had a permanent disability and claimed that he was suffering from several post-concussive symptoms. Plaintiff stated that he became permanently disabled on the day he was released from his contract by the Carolina Panthers and his football career ended.

¶ 7    In 2014, plaintiff was evaluated by medical professionals and was diagnosed with post-concussion syndrome. The doctor that evaluated plaintiff opined that plaintiff was unlikely to return to playing professional football and that, to a reasonable degree of medical certainty, plaintiff was permanently disabled with post-concussion syndrome. Plaintiff was also evaluated by doctors retained by Lloyd's of London. Those doctors opined that plaintiff was not permanently disabled, that he could participate in his occupation of playing professional football, and that whether plaintiff would return to playing professional football was his choice. Lloyd's of London denied plaintiffs disability claim.

¶ 8    Plaintiff then sought benefits from the NFL Player Retirement Plan claiming a permanent disability. The Retirement Plan first denied plaintiff's claim, but plaintiff was referred to a neurologist for an evaluation in connection with his claim for benefits from the Retirement Plan. The evaluating physician found that "[plaintiff's] constellation of symptoms, including cognitive impairment, debilitating headaches, dizziness/vertigo, and behavioral changes characterized by irritability, depression, anxiety and outbursts, is consistent with a chronic post-concussion

syndrome." The doctor went on to conclude that plaintiff met the criteria for permanent disability, and the Retirement Plan reversed its decision and awarded benefits to plaintiff.

¶ 9     Still believing his disability insurance claim with Lloyd's of London was improperly denied, plaintiff filed suit against Lloyd's of London in North Carolina in 2016. Plaintiff repeated that he was permanently disabled. The doctor who evaluated plaintiff for his lawsuit against Lloyd's of London found that plaintiff's then-existing cognitive impairments may well have been caused by the August 29, 2013 head injury—the concussion that ended plaintiff's career. The doctor diagnosed plaintiff with chronic post-concussion syndrome on October 8, 2015.

¶ 10     While plaintiff was pursuing his insurance claim, thousands of other retired NFL players were suing the League seeking redress for claims that the NFL failed to inform them about and protect them from the risks of concussions in football. See, *e.g.*, *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410 (3d Cir. 2016). The players' suits were consolidated into a federal class action case which eventually consisted of about 5,000 former players who had filed substantially similar lawsuits. *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351, 361 (E.D. Pa. 2015). The National Football League settled lawsuits with the former players involved in the federal class action case. *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 447-48 (3d Cir. 2016). Plaintiff was not a party to the federal class action case against the NFL.

¶ 11     Plaintiff has not yet been diagnosed with a severe neurodegenerative disease like Alzheimer's or dementia like many of the former players that sued the NFL. See *Butler v. BRG Sports, LLC*, 2019 IL App (1st) 180362, ¶¶ 10-13. Nonetheless, plaintiff characterizes his diagnosis of chronic post-concussion syndrome as representing a permanent disability.

¶ 12     Plaintiff filed this case against defendant Riddell and its associated entities (collectively "Riddell" or "defendants") on October 5, 2017. Riddell is a manufacturer of sports equipment and is the NFL's officially licensed helmet provider. Plaintiff is suing Riddell for negligence and strict product liability for the defective design of its helmets which he alleges failed to protect him from the head trauma he suffered while playing football. Plaintiff also alleges that Riddell conspired with the NFL to misinform players about the risks of long-term brain damage that can result from playing football, even with a helmet. Plaintiff maintains that Riddell has long known about the dangers and the harmful effects of repeated concussive and subconcussive traumas, but that it never warned the users of its helmets about such dangers.

¶ 13     In the circuit court, Riddell moved to dismiss this case arguing that the claims asserted herein are barred by the statute of limitations. The statute of limitations for plaintiff's principal claims for personal injury is two years.[2] There is no dispute that the concussions plaintiff suffered that were the impetus for the harms he now faces occurred more than two years before this case was filed. The question in this case, however, is when did the cause of action *accrue* for the harm plaintiff now faces and for which he now seeks redress?

¶ 14     Defendants argue that the statute of limitations for the claims plaintiff now interposes began to run when plaintiff received diagnoses of a permanent injury related to his August 2013 concussion. Defendants maintain that plaintiff received a diagnosis of a permanent disability more than two years before filing this case. On the other side of the issue, plaintiff argues that his single concussion in 2013 did not trigger the statute of limitations for claims arising from latent brain injuries. Alternatively, plaintiff argues that the statute of limitations began to run only when he received the diagnosis that he had *chronic* post-concussion syndrome in 2015 and, thus,

_____

[2] Plaintiff has also asserted fraudulent concealment which he claims provides him with a five-year limitations period.

his 2017 filing in this case is timely. The circuit court dismissed plaintiff's claims finding them to be barred by the statute of limitations. Plaintiff now appeals.

¶ 15                       II. ANALYSIS

¶ 16                       A. Discovery Rule

¶ 17     Plaintiff argues that the trial court erred when it dismissed his claims as barred by the statute of limitations. This appeal requires us to examine and apply the "discovery rule." The purpose of the discovery rule is to postpone the starting of a suit-limitations period until the injured party knows or should know of his injury. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). The event that triggers the running of the statutory limitations period is not the first knowledge that the injured person has of his injury, and, at the other extreme, it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered. *Id*. at 415. Rather, the statutory limitations period starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. *Id*.

¶ 18     In this suit, plaintiff is suing to recover for the long-term, latent brain damage he suffered. He argues that there is no evidence that he knew about his long-term, latent injury more than two years before this case was filed. The basic premise of plaintiff's position is that he did not "discover" the injury for which he now seeks recovery—a latent neurodegenerative brain disease—when he suffered an acute concussion or when he was pursuing his disability claim. Instead, plaintiff maintains that he filed this case within two years of discovering his long-term injury.

¶ 19     As opposed to a sudden traumatic event which causes the statutory limitations period to begin running immediately, when a plaintiff's injury does not manifest itself until sometime after

the defendant's wrongful act occurred, the plaintiff's cause of action is said to accrue when the plaintiff knows or reasonably should know that he has been injured by the wrongful conduct of another. *VaSalle v. Celotex Corp.*, 161 Ill. App. 3d 808, 810 (1987). When a plaintiff's injuries are the result of "several ostensibly innocuous circumstances," the plaintiff's cause of action accrues when the plaintiff knows or reasonably should know that he has been injured by the wrongful conduct of another. *Id.*

¶ 20    In *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161 (1981), the plaintiff knew that he had "lung problems" as early as 1957. He was diagnosed with asbestosis in 1973. The plaintiff sued in 1975. The supreme court held that the plaintiff's claim was not subject to dismissal as untimely under the two-year statute of limitations because there was a question of fact as to whether the plaintiff had sufficient knowledge that the "lung problems" he was experiencing 20 years earlier were caused by his exposure to asbestos. *Nolan*, 85 Ill. 2d at 171.

¶ 21    Plaintiff argues that the concussion he suffered on August 29, 2013 cannot be said to be the point of accrual for latent neurodegenerative disorders like CTE, Alzheimer's, Parkinson's, or dementia. Plaintiff contends that his conduct in filing an insurance claim and a lawsuit attendant to his insurance claim do not evidence knowledge of any latent neurodegenerative disorder and do not bar this suit which is based upon conditions that manifest over many years as a result of repetitive head trauma.

¶ 22    Defendants argue that the admissions made by plaintiff in filings to the NFL disability claims committee, Lloyd's of London, and to the court during his suit against Lloyd's of London evidence his knowledge of his injury such that his claims are barred by the statute of limitations. Defendants point out that plaintiff alleged in those matters that he was diagnosed as being totally and permanently disabled as a result of suffering concussions and that he had a long-term brain

injury. Defendants contend that plaintiff is trying to prosecute a new lawsuit for only a new symptom or condition, but that his suit is, nonetheless, a new lawsuit for the same injury.

¶ 23    Defendants point us to case law establishing that a plaintiff who knows he is injured need not know the exact nature or extent of his injuries in order for the statute of limitations to begin running. In *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 367 (1995), a plaintiff knew that she suffered injuries at the time of a car accident. The plaintiff tacitly admitted that she could have filed suit for some of her injuries when the accident happened, but she waited four years to file suit until after she was diagnosed with a more serious condition, reflex sympathetic dystrophy.

¶ 24    Our supreme court explained that when the plaintiff in *Golla* filed suit upon learning of her more serious injury, her claim was filed too late. The court observed that the case involved "not a plaintiff who failed to discover *any* injury, but a plaintiff who failed to discover the full extent of her injuries before the statute of limitations expired." *Id*. (Emphasis in original). The *Golla* court explained that "[t]here is no requirement that a plaintiff must discover the full extent of her injuries before the statute of limitations begins to run" and, thus, "[b]ecause the plaintiff knew or should have known at the time of the accident both that she was injured and that the injury may have been wrongfully caused, the limitations period commenced at that time." *Id*.

¶ 25    Under the line of reasoning embodied in *Golla*, defendants argue that plaintiff's claims here are barred because the discovery rule does not restart the statute of limitations each time a plaintiff is diagnosed with a new condition stemming from an injury. Defendants contend that plaintiff clearly knew that he was injured from the head trauma he suffered while playing football and that he had sufficient information about his injury to trigger the statute of limitations as evidenced by his conduct in pursuing his disability claim.

¶ 26    We find that plaintiff's knowledge of his acute concussion in 2013 and his conduct

associated with his disability claim is insufficient to *per se* establish that the claims he presents here are barred by the statute of limitations. In pursuing his disability claim, plaintiff was seeking recourse for the consequences of a single severe concussion. Here, plaintiff is seeking recourse for repetitive concussive and subconcussive trauma experienced while playing football. In addition, plaintiff was seeking redress for injury under a disability insurance policy that covered the risk that he might suffer a career-ending injury. The disability benefits were designed to serve as a replacement for income for plaintiff's inability to perform occupational duties and to cover medical expenses. Here, plaintiff is seeking redress for lifelong cognitive degeneration.

¶ 27    Courts in other jurisdictions have addressed the appreciable differences between a plaintiff that suffers an acute concussive injury and that same plaintiff suffering repetitive head trauma that may bring about other degenerative neurological disorders. See *McCullough v. World Wrestling Entertainment, Inc.*, 172 F. Supp. 3d 528, 547 (D. Conn. 2016) (knowledge about a single concussion is not the same as knowledge about CTE or another degenerative neurological disorder); *Schmitz v. National Collegiate Athletic Association*, 2018-Ohio-4391, ¶¶ 21-28 (knowledge of head injuries while playing football is not sufficient to demonstrate that the statute of limitations for claims premised on CTE and other neurological diseases began to run). Like the plaintiffs in those cases, plaintiff's knowledge of his severe 2013 concussion and even his knowledge of memory problems, depression, and impulsivity stemming from that concussion do not establish that he knew about the cumulative and progressive injury he suffered while playing football with Riddell helmets. See *Lancaster v. Norfolk & Western Railway Co.*, 773 F.2d 807, 821-22 (7th Cir. 1985) (early symptoms of mental distress that are the precursor to mental illness do not cause the statute of limitations to run where the onset of the illness is insidious and the early symptoms are ambiguous); see also *Rose v. National Collegiate Athletic*

*Association*, 346 F. Supp. 3d 1212, 1223 (N.D. Ill. 2018) (distinguishing *Golla* and explaining that football-related head injuries are late onset injuries in which a plaintiff's knowledge of the defendant's wrongfulness may not be able to be resolved on the pleadings).

¶ 28     In ruling on defendants' motion to dismiss, the trial court observed that "with regard to Mr. Nakamura," "he had the one particularly bad concussion" so "he certainly knew that he was injured." But this case is based on the repeated and cumulative effect of concussions, not a single one. Latent neurodegenerative diseases manifest over several years as a result of *repetitive* head trauma. There is nothing in the record that demonstrates that Nakamura knew of *these injuries* and their wrongful cause more than two years before this case was filed. The knowledge of having suffered one severe concussion does not mean that the person has knowledge of all brain related injuries, including those that generally require multiple traumas to actualize. CTE and other head-trauma-induced neurodegenerative diseases generally do not result from a single concussion. The allegations in this case leave open the possibility that there is a question of fact about when Nakamura knew or should have known about his injury and its wrongful cause. Construing the allegations in the light most favorable to plaintiff, we cannot say defendants have met their burden of demonstrating that the claims are, in fact, time barred.

¶ 29     Even though Nakamura was diagnosed as "permanently disabled" from the concussion he suffered in 2013, there is no evidence that he knew at that time that he was suffering from a latent brain injury that would manifest in the form of an insidious neurodegenerative disorder. In contrast to the plaintiffs in the *Butler* and *Ali* appeals who sued for and recovered for latent brain injuries based on the totality of their concussions (see *Butler*, 2019 IL App (1st) 180362, ¶ 59), Nakamura's prognosis in his disability proceedings was based on one discrete concussion. In submitting proof in support of his disability claim, Nakamura averred that he suffered

"permanent and total disablement due to his August 2013 concussion." His doctor wrote at the time that there was "no evidence among records that prior head injuries contributed to Mr. Nakamura's permanent total disablement." The doctor further opined that plaintiff's "prognosis is fair to good for improvement with post-concussive syndrome." Nakamura's knowledge of that single incident and the effects thereof is not sufficient to show that he knew of the injury that is the basis for this case—a latent brain injury manifesting in severe neurodegenerative diseases— and its wrongful cause.

¶ 30     When pursuing his disability claim, plaintiff was seeking compensation in the form of contractual benefits based upon his inability to perform his occupation. In this case, plaintiff is seeking compensation in the form of damages for tortious conduct in preparation of enduring lifelong neurocognitive decline and the development of neurodegenerative disorders. In the past, plaintiff was suing an insurance company, principally for breach of contract, for one discrete occurrence; he was not suing for tortious conduct relating to the totality of his injuries. This case aligns with our supreme court's decision in *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161 (1981). And like in that case, the allegations in this case at least leave open that there is a question of fact regarding plaintiff's knowledge of his injury and its wrongful cause for statute of limitations purposes. *Nolan*, 85 Ill. 2d at 171-72.

¶ 31     While plaintiff might have been aware of his acute concussion or even his post-concussion syndrome when he filed an insurance claim, there is no evidence he was aware of a latent brain injury that would later manifest in the form of CTE or another severe neurodegenerative disorder. Plaintiff is not seeking to divide his injury among multiple lawsuits as defendants claim. A single concussion—even a severe, debilitating one—is a different injury than a latent brain injury caused by *repetitive* head trauma. Plaintiff's conduct in the proceedings

related to his disability claim does not preclude him from seeking recompense for a latent brain injury, at least insofar as the statute of limitations is concerned. *Moon v. Rhode*, 2016 IL 119572, ¶¶ 50-53.

¶ 32                              B. Fraudulent Concealment

¶ 33    Because we find that defendants have not demonstrated that plaintiff's claims are barred by the applicable statute of limitations, we do not address plaintiff's claims that defendants fraudulently concealed his causes of action.

¶ 34                         C. Potential Problems With Plaintiff's Claims

¶ 35    Even though we find that defendants have not demonstrated that plaintiff's claims are time barred, plaintiff's own arguments raise concerns about the viability of his claims. In the trial court and at times in this court, plaintiff focused on the change in his diagnosis from post-concussion syndrome to *chronic* post-concussion syndrome as being the point in which the statute of limitations was triggered for him to pursue the remedies he seeks here. Now plaintiff appears to have pivoted to a different position in which he contends that "the statute of limitations cannot run until [plaintiff] inevitably, albeit unfortunately, is diagnosed with a neurodegenerative disease." Plaintiff, however, makes clear that he has not been diagnosed with any such neurodegenerative disease. By plaintiff's own arguments, he makes the case against himself, exhibiting that his claims are not even ripe, are not judiciable.

¶ 36    The arguments made on appeal and the record as it is currently developed are concerned with the issue of timeliness. Whether plaintiff's claims are justiciable is a different matter. The record is too underdeveloped on the issues of ripeness and judiciability for us to order plaintiff's claims dismissed on those bases. Further factual development will determine the ultimate legal viability of plaintiff's claims.

¶ 37   At oral argument, for example, plaintiff claimed that even though he is yet to be diagnosed with a neurodegenerative disorder, he is entitled to recover for the increased risk of being diagnosed with such a disorder. See *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504 (2002) (the risk of future injuries from a defendant's wrongful conduct may be compensable in tort). So plaintiff appears to potentially have a claim upon which relief could, in some manner, be granted.

¶ 38   Thus, we do not find that plaintiff is precluded from recovering as a matter of law on the basis of timeliness. However, we caution that plaintiff's claims have significant questions about their viability going forward.

¶ 39                                III. CONCLUSION

¶ 40   Accordingly, we reverse and remand for further proceedings.

¶ 41   Reversed and remanded.