2023 IL App (1st) 220335-U

No. 1-22-0335

Order filed March 31, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| EMILY ALLARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| NPF FRANCHISING, LLC; CHICAGO | ) | |
| BANDITS, LLC, d/b/a "Chicago Bandits"; | ) | No. 2019 L 6672 |
| VILLAGE OF ROSEMONT; FASTPITCH | ) | |
| PARTNERS, LLC, d/b/a "Akron Racers"; CITY | ) | |
| OF AKRON; BILL SOKOLIS; AARON | ) | Honorable |
| MOORE; CHERI KEMPF; and TONI | ) | Diane M. Shelley, |
| CALMEYN, | ) | Judge presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (NPF Franchising, LLC; Chicago Bandits, LLC, | ) | |
| d/b/a "Chicago Bandits"; Village of Rosemont; | ) | |
| Bill Sokolis; Aaron Moore; and Toni Calmeyn, | ) | |
| | ) | |
| Defendants-Appellees.) | ) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the dismissal of most of plaintiff's claims sounding in negligence as time-
barred as well as the dismissal for want of jurisdiction based on the exclusive remedy

provision of the Workers' Compensation Act. We reverse, however, the dismissal of a negligence claim for failing to maintain workers' compensation coverage.

¶ 2　Emily Allard appeals an order dismissing her claims arising from a concussion suffered while playing softball. She raises two issues: (1) did the circuit court err in dismissing negligence claims against the Village of Rosemont and NPF Franchising, LLC as time-barred, because the discovery rule postponed the commencement of limitations period of her claims; and (2) did the circuit court err in dismissing claims against the Chicago Bandits for lack of jurisdiction because her claims fall under exceptions to the exclusive remedy provision of the Workers' Compensation Act?[1] For the following reasons, we affirm in part and reverse in part.

¶ 3　　　　　　　　　　　　　　BACKGROUND

¶ 4　A professional softball player, Emily Allard played for the Chicago Bandits from 2014 to 2016. The Chicago Bandits is a professional women's softball team affiliated with the National Pro Fastpitch League, operated and maintained by NPF Franchising, LLC.

¶ 5　The Chicago Bandits drafted Allard in 2014, and after a successful year, she re-signed with the team for the 2016 season and executed the NPF team uniform player contract, which provided that the parties were also bound by the NPF Player's Manual for 2016. At the time of her signing, the Bandits informed Allard that the team maintained active workers' compensation insurance in compliance with the 2016 NPF manual. The Bandits also promised Allard that it would provide secondary medical insurance for the players. At that time, Bill Sokolis owned the team, and Aaron Moore served as its general manager.

---

[1] Bill Sokolis, Aaron Moore, and Toni Calmeyn each argue that any argument concerning claims against them (counts XVIII and XIX) are forfeited. The dismissal of those claims is not part of this appeal.

¶ 6    On June 14, 2016, the Bandits traveled to Akron, Ohio to play against the Akron Racers at Firestone Stadium. At one point during the game, Allard ran to catch a fly ball and collided with the fence at the edge of the field. The fence caught her at her waist, and her six-foot-tall frame doubled over, with her head down and her feet lifted off the ground. She then returned to a standing position. Her fellow players and head coach checked on her from across the field with a thumbs-up signal, and Allard, having no apparent injuries at that moment, returned the thumbs-up. However, as she walked back to her position, Allard began to see "stars" and realized that she needed medical assistance. The game resumed, and she left the field to talk to the team trainer about her symptoms, which included nausea, headache, stars in her vision, and ringing in her ears. The trainer gave her some ibuprofen, and she did not return to the game.

¶ 7    Allard's condition went untreated for another day, and the Bandits played a second game in Ohio. Upon the team's return home, the Bandits doctor placed Allard on "concussion protocol," which prohibited Allard from attending games or practices. She remained on the protocol for approximately 10-12 days. Afterwards, Allard attempted to return to her sports routine, but her concussion symptoms immediately returned and worsened. On July 24, 2016, the Bandits terminated its contract with Allard and released her as "unable to play" based on her injury. Through the remainder of 2016 and 2017, she went through extensive therapy at her own expense.

¶ 8    In summer of 2017, Allard returned to the Bandits under a new contract. By 2017, the Bandits had gone through a change in ownership: the Village of Rosemont now owned the team with Toni Calmeyn as the new general manager. When Allard began practice, her concussion symptoms returned almost immediately. She communicated these symptoms to the ownership, but the Village and Calmeyn nonetheless cleared her to continue playing. In the first game after her

return, the symptoms adversely affected her performance. The ownership changed her position to an offensive position from her usual defensive position for the next two games.

¶ 9      At the start of the 2017 season, Allard saw a neurologist referred by the team doctor. When she provided her medical insurance information, the hospital would not accept her primary insurance, and it also declined her secondary insurance through the Bandits. Allard reached out to Calmeyn, prompting her to investigate the team records from the old ownership. Calmeyn instructed Allard to sit out of games until they resolved the insurance issue.

¶ 10      On June 7, 2017, the Bandits filed a workers' compensation claim with its insurance carrier, Liberty Mutual, for Allard's concussion injury. The insurance adjuster informed the team that its policy had lapsed from September 12, 2015 through July 12, 2016. Calmeyn informed Allard that her injury was not covered because the former team owner had failed to pay insurance premiums for nearly one year. Subsequently, Allard's 2017 contract with the Bandits terminated.

¶ 11      In late May of 2019, Allard spoke to a former owner of the Akron Racers, Joey Arrietta. Arrietta informed Allard that safety improvements had been made to the fencing at Firestone Stadium and said, "The new fencing was done because of you."

¶ 12      On June 14, 2019, Allard filed her initial complaint, and on October 31, 2019, she filed the first amended complaint, adding a negligence claim with the Village of Rosemont as the defendant. After extensive briefing, the circuit court dismissed negligence claims against the Village and NPF Franchising, LLC with prejudice as time-barred under section 13-202 of the Code of Civil Procedure. 735 ILCS 5/13-202 (West 2018). The circuit court also dismissed claims for negligence, breach of contract, breach of fiduciary duty, promissory estoppel, breach of implied covenant of good faith and fair dealing, fraud, fraud in the inducement, fraudulent concealment,

and unjust enrichment against the Bandits for lack of jurisdiction under the Workers' Compensation Act. 820 ILCS 305/1 *et seq.* (West 2018). The circuit court denied Allard's motion to reconsider. The circuit court's subsequent orders dismissed the remaining claims, and Allard timely appealed. Ill. S. Ct. R. 303(a) (eff. July 1, 2017).

¶ 13                                    ANALYSIS

¶ 14    Allard appeals the dismissal of her claims on statute of limitations and subject matter jurisdiction grounds. 735 ILCS 5/2-619 (West 2018). When considering a motion to dismiss under section 2-619, a court must accept as true all well-pleaded facts in the complaint, as well as any inferences that may reasonably be drawn in plaintiff's favor. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. A dismissal based on section 2-619 is reviewed *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 15                              A. Statute of Limitations

¶ 16    Allard argues that the circuit court erred in dismissing her negligence claims against the Village of Rosemont and NPF Franchising as time-barred because the limitations period began to run not on the date of her concussion injury, but later. An action for personal injury must be filed "within 2 years next after the cause of action accrued." 735 ILCS 5/13-202 (West 2018). However, the common-law discovery rule delays commencement of the applicable limitations period. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). Under the discovery rule, the limitations period starts to run "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Id.* at 415.

¶ 17    Allard contends that the statutory limitations period did not start to run on June 14, 2016, the date of her concussion, because her injury was not a "sudden traumatic event" but the result of

"several ostensibly innocuous circumstances." This distinction is significant because where the plaintiff's injury is caused by a "sudden traumatic event," the cause of action accrues—and the statute of limitations begins to run—on the date that the injury occurs. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 363 (1995). On the other hand, when a plaintiff's injury is a result of "several ostensibly innocuous circumstances," the cause of action accrues when the plaintiff knows or reasonably should know that he has been injured by the wrongful conduct of another. *VaSalle v. Celotex Corp.*, 161 Ill. App. 3d 808 (1987) ("[W]here a plaintiff's injury is latent, that is, does not manifest itself until some time after defendant's wrongful act occurred, the plaintiff's cause of action is said to accrue when plaintiff knows or reasonably should know he has been injured by the wrongful conduct of another."); see also *Nakamura v. BRG Sports, LLC*, 2019 IL App (1st) 180397, ¶ 19.

¶ 18    NPF Franchising argues that Allard forfeited the issue of whether her concussion injury was a "sudden and traumatic event" because she failed to argue the issue to the circuit court in her response to motions to dismiss. In fact, in her combined response to NPF Franchising's motion to dismiss, Allard did raise the issue of when the statute of limitations for her claims began to run, the underlying issue prompting the discussion of a "sudden traumatic event" versus "several innocuous circumstances." NPF Franchising's own reply as well as the circuit court's written ruling referenced the "sudden traumatic event" language from *Golla v. General Motors Corp.* (167 Ill. 2d 353 (1995)) Allard had already relied on, and it should not take NPF Franchising by surprise that she now discusses the case more in depth. Accordingly, we address the issue on its merits.

¶ 19    Allard characterizes her injury as starting with a whiplash that led to "a worsening and pervasive concussion injury" through a series of allegedly wrongful acts of defendants. She alleged

that the Bandits personnel did not immediately treat her after the concussion, that she was not taken to a doctor for a few days following the incident, and that the Bandits assigned her to continue playing for games in the 2017 season despite her symptoms. By her own words, Allard's injury resulted from a single instance of whiplash and worsened over time. That the plaintiff did not realize the consequences or the full extent of her injury at the moment of the injury does not postpone the accrual of her claim. *Golla*, 167 Ill. 2d at 364. Indeed, Allard alleged that within minutes after the whiplash, she began to see stars in her vision and realized that she needed medical attention. Without question, there was "an injury of some magnitude" (*Id.* at 365), of which Allard was almost immediately aware. Plainly, this factual pattern is what the *Golla* court contemplated in discussing the rationale underlying the "sudden traumatic event" rule: "the nature and circumstances surrounding the traumatic event are such that the injured party is thereby put on notice that actionable conduct might be involved." *Id.* at 363.

¶ 20    It was also apparent that Allard was on notice, at that moment, of NPF Franchising's conduct. Her allegations against NPF Franchising include its failure to provide a safe workplace with safe fencing and failure to require the teams to implement concussion protocols as soon as a player sustained an injury. When Allard signed with the Bandits for the 2016 season, the Bandits gave her a copy of the 2016 NPF manual, which required fencing of softball fields to be 6 feet or higher. Thus, when she collided with the fencing that only stood at her waist level, she knew or should have known that the fencing height failed to comply with NPF's own standards. The fact that she obtained actual knowledge about the noncompliant fencing three years after the injury is immaterial. See *SK Partners I, LP v. Metro Consultants, Inc.*, 408 Ill. App. 3d 127, 130 (2011) ("under the discovery rule, a statute of limitations may run despite the *lack* of actual knowledge of

negligent conduct" (emphasis in original)). Further, she knew instantly that no team or league personnel came to check on her immediately after the whiplash.

¶ 21     Allard's injury is therefore distinguishable from an injury that is the result of "several ostensibly innocuous circumstances" discussed in cases involving latent brain injuries from sports. See *Nakamura*, 2019 IL App (1st) 180397; see also *Butler v. BRG Sports, LLC*, 2019 IL App (1st) 180362; *Rose v. National Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212 (N.D. Ill. 2018). In *Nakamura*, the plaintiff, a former football player, complained of the long-term, latent brain damage suffered as a result of repeated head trauma. *Nakamura*, 2019 IL App (1st) 180397, ¶¶ 18, 21. The court refused to apply the "sudden traumatic event" rule under *Golla* because the plaintiff was "seeking recourse for *repetitive concussive and subconcussive trauma* experienced while playing football," not for the consequences of a single concussion. (Emphasis added.) *Id.* ¶ 26. The plaintiff's knowledge of one severe concussion was not relevant because the basis of his case was not an injury resulting from that single incident but the latent brain injury that manifested over several years as a result of "*repeated and cumulative* effect of concussions." (Emphasis added.) *Id.* ¶¶ 28-29 ("CTE and other head-trauma-induced neurodegenerative diseases generally do not result from a single concussion."); see also *Butler*, 2019 IL App (1st) 180362, ¶ 33 (observing that the basis of the case was the "several innocuous" brain traumas over the years and the slow-developing neurodegenerative disorders); *Rose*, 346 F. Supp. 3d at 1222-23 (the plaintiffs alleged that the athletes experience an increased risk of developing neurodegenerative diseases caused by repetitive and cumulative brain trauma and that they may display no immediately noticeable symptoms). In contrast, Allard's injury is based on one discrete concussion and the consequences

arising from it. She did not allege any other concussions sustained while playing softball or that her injury is a latent brain injury resulting from repetitive head trauma.

¶ 22    However, the application of the "sudden traumatic event" rule does not bar Allard's negligence claim against NPF Franchising in its entirety. The claim included allegations that NPF Franchising negligently failed to ensure that its teams maintained an active workers' compensation insurance. Here, Allard could not have known that the team's workers' compensation insurance lapsed at the time of her injury until the insurer denied the claim and that denial was communicated to her. *Knox College*, 88 Ill. 2d at 415 (the limitations period starts to run when a person "also knows or reasonably should know that it was wrongfully caused"). Consequently, the cause of action based on this conduct could not have accrued on June 14, 2016, the date of the concussion. The Bandits' general manager (Calmeyn) informed Allard of the insurance claim denial on June 14, 2017, and she filed her initial complaint on June 14, 2019. Because the action was filed within the two-year limitations period, Allard's negligence claim against NPF Franchising is not time-barred to the extent that it alleges NPF Franchising's negligence in failing to ensure its teams' active insurance status.

¶ 23    Likewise, Allard's cause of action against the Village of Rosemont did not accrue on June 14, 2016, but in June 2017 when the Village assigned her to play multiple games despite her injury. However, the Village argues that the claim is time-barred on a different ground—that Allard did not add the Village as a defendant until the filing of the first amended complaint on October 31, 2019, more than two years from June 2017.[2]

---

[2] The Village also asserts that the claim is subject to one-year limitations period under the Local Governmental and Governmental Employees Tort Immunity Act. We need not reach this argument because the claim is time-barred even when applying the longer two-year limitations period.

¶ 24    Section 2-616(d) governs when the addition of a defendant relates back to the timely filed complaint so as to avoid the affirmative bar of the statute of limitations. 735 ILCS 5/2-616(d) (West 2018). This relation-back statute is plainly inapplicable. The statute only applies where a plaintiff has made a mistake in identifying a defendant, not when he failed to join a proper defendant. *Id.*; *Mann v. Thomas Place, L.P.*, 2012 IL App (1st) 110625, ¶ 23. This failure to timely include a defendant does not constitute a mistake concerning the identity of a proper party for purposes of the relation-back statute. Therefore, Allard's negligence claim against the Village is barred by the statute of limitations.

¶ 25                            B. Workers' Compensation Act

¶ 26    Allard argues that the circuit court erred in dismissing her claims against the Bandits for lack of jurisdiction because her claims fall outside of the Workers' Compensation Act. The Workers' Compensation Act was enacted "to abrogate the common law rights and liabilities which previously governed an injured employee's ability to recover against his employer." *Sharp v. Gallagher*, 95 Ill. 2d 322, 326 (1983); see also 820 ILCS 305/1 *et seq.* (West 2014). The Act specifically provides that the statutory remedies under the Act are to serve as the employee's exclusive remedy if he sustains a compensable injury:

> "[N]o common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a).

In an employee's action against an employer, the Act requires "exclusive resort" to the workers' compensation remedy for any injury arising out of and in the course of the employment covered

by the Act. *Garland v. Morgan Stanley & Co., Inc.*, 2013 IL App (1st) 112121, ¶ 24. In order to circumvent this bar on common law actions, a plaintiff must allege and prove that the injury either: (1) was not accidental; (2) did not arise out of employment; (3) was not incurred during the course of employment; or (4) was not compensable under the Act. *Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill. 2d 455, 463 (1990).

¶ 27 First, Allard contends that her injury did not arise out of her employment with the Bandits because her claims arise out of her relationship with the employer, not out of a workplace injury. An injury arises out of employment when "the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *McAllister v. Illinois Workers' Compensation Commission*, 2020 IL 124848, ¶ 36. Whether characterized as fraud claims, contract claims, or equitable claims, all of Allard's claims against the Bandits, in essence, point to her injury deriving from the June 14, 2016 concussion. She alleged in each of these claims that the Bandits failed to maintain workers' compensation insurance and that, as a result, she was not properly compensated for a career-ending concussion injury. See *James v. SCR Medical Transportation, Inc.*, 2016 IL App (1st) 150358, ¶ 9 (rejecting the employee's argument that he is suing for the employer's failure to maintain insurance coverage and observing that he is truly suing to be compensated for his injuries). This injury, sustained while playing for the Bandits, is clearly an injury arising out of employment, and Allard's claims arise out of this workplace injury.

¶ 28 Allard's reliance on *West v. Western Casualty and Surety Co.* (846 F.2d 387 (7th Cir. 1988)) is misplaced. She contends that her fraud claims are not barred, as in *West*, because her injury is only incidental to the concussion and it arose out of her relationship with the employer.

In *West*, an employee brought a fraud claim against his employer's workers' compensation insurer. *Id.* at 390. The court held that the action was not barred by the Act because the employee's injury was the deprivation of a right to bring a claim against a third party due to the insurance company's deliberate misrepresentation regarding his legal rights. *Id.* at 392-93. Here, not only are Allard's claims directly against her employer, but she specifically alleged that she was injured by not getting the full compensation for her concussion injury due to the Bandits' failure to maintain insurance.

¶ 29    Further, Allard's argument that her breach of contract and breach of implied covenant of good faith and fair dealing claims involve interpretation of the contract provisions is unpersuasive. *Employers Mutual Companies v. Skilling* (163 Ill. 2d 284, 290 (1994)) holds that the circuit court and the Workers' Compensation Commission have concurrent jurisdiction to hear the insurance coverage issues and that the circuit court's jurisdiction is paramount when *the question of law* was presented to the circuit court in the declaratory judgment action. Here, Allard's allegations do not raise a question of law involving the interpretation of contract provisions. Rather, her allegations are straightforward as to the Bandits' agreement to provide and maintain workers' compensation insurance and as to its breach by failing to do so. See *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 483 (2009) ("Whether a breach of contract has occurred generally is *** a question of fact.").

¶ 30    Allard also argues that her fraud claims are not barred by the exclusive remedy provision of the Act because they are intentional torts. Whether a claim avoids the exclusive remedy rule of the Act as an intentional tort is "dependent upon the object of the employer's intention," that is to say, the employer must have acted with a specific intent to injure the employee. *Mayfield v. ACME Barrel Co.*, 58 Ill. App. 3d 32, 35 (1994) (citing *Copass v. Illinois Power Co.*, 211 Ill. App. 3d

205, 213 (1991). Even if the employer knowingly ordered the employee to perform an extremely dangerous job, willingly failed to furnish a safe place to work, or willfully and unlawfully violated a safety law, the conduct would still fall short of the kind of specific intent that strips the resultant injury of its accidental character. 2A Arthur Larson, Workmen's Compensation Law § 68.13 (1990).

¶ 31    Here, the resultant injury to Allard was her workplace concussion injury. Her complaint is devoid of any allegation that, for example, the Bandits knew "with 100% certainty" that its conduct would injure her. See *Daniels v. Venta Corporation*, 2022 IL App (2d) 210244, ¶ 29 (alleging that the employer knew "with 100%" certainty" that directing the employee to remove asbestos would injure him). Allard argues that the thrust of her fraud claims is that she was harmed in that she lost an opportunity to contract with another team, but her allegations in the operative pleading do not support this contention. In her fraud claims, she alleged that had the Bandits not fraudulently told her about its insurance status, she would not have played for the Bandits and, as a result, would not have sustained her injury. She also alleged that had the Bandits properly maintained active insurance coverage, she could have recovered on her workers' compensation claim. As previously discussed, it is clear that the core of Allard's claims is her concussion from the June 14, 2016 game and that she was not fully compensated for this injury due to the Bandits' failure to maintain workers' compensation insurance. Having failed to allege that the Bandits acted with specific intent to injure Allard, her fraud claims are not barred by the exclusive remedy provision of the Act. See *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 21 (the plaintiff alleged that the defendants knowingly failed to provide adequate bank security to prevent robbery but failed to allege that they "commanded or expressly authorized her injuries" inflicted by robbers).

¶ 32    Lastly, Allard argues that her injury is not compensable under the Act because the employment contract between Allard and the Bandits might be voidable. The Bandits contends that this argument was never raised before the circuit court and is forfeited. Allard does not seek to void her employment contract with the Bandits in her complaint, nor did she raise this issue as to the noncompensability of her injury under the Act in any of her responses to defendants' motions to dismiss. Therefore, the argument is forfeited.

¶ 33                                    CONCLUSION

¶ 34    The judgment of the circuit court of Cook County is affirmed in part and reversed in part. Allard's negligence claim against NPF Franchising, to the extent that it alleges NPF Franchising's failure to ensure the teams' active workers' compensation insurance status, is remanded for further proceedings.

¶ 35    Affirmed in part and reversed in part.